The STATE of Texas, Appellant,

v.

Corey Dewayne FISHER, Appellee.

No. 06–05–00205–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 18, 2006.

Decided June 20, 2006.

Discretionary Review Refused Sept. 20, 2006.

Ray Bowman, Asst. Dist. Atty., William M. Jennings, Dist. Atty., Longview, for appellant.

Clement Dunn, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

After being confined for nearly ten months in the Gregg County Jail on several felony charges, without having been indicted by a grand jury, Corey Dewayne Fisher filed a motion to dismiss the charges against him for want of a speedy trial. Those charges stemmed from Fisher's November 10, 2004,[1] arrest for possession of more than four grams of cocaine[2]

---

**1.** The record does not include a copy of the arrest report or any documentation concerning Fisher's confinement. However, the record contains other evidence, such as testimony from Fisher's trial counsel and from the State, suggesting Fisher had been continuously confined since November 10, 2004.

**2.** Cocaine is a penalty group one controlled substance. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp.2005).

with intent to deliver,[3] possession of more than four grams but less than 200 grams of cocaine,[4] and possession of a firearm by a felon.[5] Fisher submitted his dismissal motions to the 188th Judicial District Court August 26, 2005.[6] That same day, the trial court scheduled a hearing on the motions for September 7, 2005.

On September 1, 2005, a grand jury for the 124th Judicial District Court indicted Fisher in these cases. However, because the speedy trial motions had already been submitted and docketed in the 188th Judicial District Court, the presiding judge of the 124th Judicial District Court transferred these newly-indicted cases to the 188th Judicial District Court September 7, 2005.[7] After a short hearing September 7, 2005, the presiding judge of the 188th Judicial District Court granted Fisher's motions to dismiss all felony charges stemming from his November 10, 2004, arrest.[8] The State has now timely sought review of those dismissals.[9]

On appeal, the State contends the trial court improperly weighed the factors required by *Barker v. Wingo*[10] in reaching its conclusion that Fisher's right to a speedy trial had been violated.

### 1. Procedural Consideration

The traditional method for presenting a speedy trial claim before an indictment is returned is through the filing of a pretrial application for writ of habeas corpus. *See, e.g., Ex parte Martin,* 6 S.W.3d 524, 524–25 (Tex.Crim.App.1999). However, our law expressly disavows any requirement that an accused employ any special form or nomenclature for presenting such a claim. *See* TEX.CODE CRIM. PROC. ANN. art. 11.03 (Vernon 2005). Nor does our law

---

3. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (Vernon 2003) (possessing more than four grams but less than 200 grams of penalty group 1 drug with intent to deliver is first-degree felony).

4. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (Vernon 2003) (simple possession of more than four grams but less than 200 grams of penalty group 1 drug is second-degree felony).

5. *See* TEX. PEN.CODE ANN. § 46.04(a), (e) (Vernon Supp.2005) (third-degree felony). The State's appeal of the possession of a firearm by felon is disposed by a separate opinion in cause number 06–05–00206–CR.

6. Due to what appears to have been a procedural oversight by the district clerk's office, Fisher's motions to dismiss were not file-stamped as being received until September 7, 2005. But the record shows all parties agreed Fisher's motions were submitted for the trial court's consideration on August 26, 2005.

7. The reporter's record filed in this case suggests the 124th District Court's transfer of the underlying cases to the 188th District Court occurred after the 188th announced its judg-

ment of dismissal in Fisher's favor. Therefore, the issue of whether the return of an indictment (in the 124th Judicial District Court) precludes action on the habeas application (by the 188th Judicial District Court) is now moot and has not been raised by either party on appeal.

8. The record reflects Fisher also faced two misdemeanor charges as a result of his November 10, 2004, arrest. Fisher acknowledged in the trial court that his speedy trial motion concerned *only* the felony charges. ("Mr. Dunn: Our [m]otion goes to the felony cases, not the misdemeanor cases, Your Honor.").

9. *See* TEX.R.APP. P. 26.2(b) (appeal by State must be filed "within 15 days after trial court enters order, ruling, or sentence to be appealed"); TEX.CODE CRIM. PROC. ANN. art. 44.01 (Vernon Supp.2005) ("The State is entitled to appeal an order of a court in a criminal case if the order: (1) dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint...").

10. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *see also Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992).

require a preindictment application be filed in a particular district court of the county of jurisdiction. *See* TEX.CODE CRIM. PROC. ANN. art. 11.05 (Vernon 2005). Though the parties have not expressly identified this case as an appeal of a trial court's ruling on a pretrial application for writ of habeas corpus, such is plainly the substance of this appeal (given the tenor of the arguments advanced in both the trial court and this Court) and we shall, therefore, treat this appeal as a habeas matter.

■ A defendant is not entitled to habeas corpus relief if he or she has an adequate remedy at law. *Smith v. Gohmert*, 962 S.W.2d 590, 593 (Tex.Crim.App.1998). This rule has been applied to preclude the consideration of a defendant's pretrial application for writ of habeas corpus concerning the constitutional right to a speedy trial. The rationale for the application of this rule is that a defendant has an adequate remedy at law—the right to file a motion to set aside the indictment pursuant to Article 27.03 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 27.03 (Vernon 1989). If the trial court erroneously denies the motion, the defendant may appeal any conviction resulting from the continued prosecution. *Smith*, 962 S.W.2d at 592 (citing *Pope v. Ferguson*, 445 S.W.2d 950, 955–56 (Tex. 1969)). The foundation of this rule is from *United States v. MacDonald*, 435 U.S. 850, 860–61, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) ("If ... an accused [is deprived] of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered."). However, the Court in *MacDonald* recognized that, when the trial court dismisses the charges

based on the speedy trial issue, the State has the statutory right to appeal. *Id.* at 857, 98 S.Ct. 1547 (recognizing that *United States v. Marion*, 404 U.S. 307, 310–12, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) authorized such an appeal).

■ In this case, when Fisher filed his motion, he could not ask for the dismissal of the indictment, as none was pending. Nevertheless, an indictment was filed and was pending at the time of the hearing. Accordingly, when the trial court granted the motion and dismissed the charges, the State could properly invoke its statutory right of appeal as the dismissal order constituted a final, dispositive, and appealable order. *Accord MacDonald*, 435 U.S. at 857, 861, 98 S.Ct. 1547.

### 2. Applicable Law and the Appellate Standard of Review on Appeal

■ "The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial." *Zamorano v. State*, 84 S.W.3d 643, 647 n. 5 (Tex.Crim.App.2002) (citing *Barker*, 407 U.S. at 515, 92 S.Ct. 2182; *Dickey v. Florida*, 398 U.S. 30, 37, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey*, 393 U.S. 374, 377–78, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. N. Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)). "In addition, Article I, § 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public trial." *Zamorano*, 84 S.W.3d at 647 & n. 6 (further referencing TEX.CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005) ("[i]n all criminal trials the accused shall have a speedy public trial by an impartial jury.")).[11] When a defendant makes a claim that he or she has been

---

11. While the Texas Constitution provides an independent speedy trial guarantee, the Texas Court of Criminal Appeals has traditionally analyzed speedy trial claims using the same analytical framework required under the United States Constitution. *Zamorano*, 84 S.W.3d at 648.

denied the right to a speedy trial, the court reviewing that claim must use the four-part test from *Barker*: the court must consider, under the totality of the circumstances, "the length of the delay, the State's reason for delay, whether the delay was due to lack of diligence on the part of the State, and whether the delay caused harm to the accused." *Ex parte Martin*, 33 S.W.3d 843, 845 (Tex.App.-Austin 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 932 (Tex.Crim.App.2001); *see also Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex.Crim.App.2003). These four "*Barker* factors" are then assigned varying weights by the court according to the individual facts of the case, placed on the appropriate sides of the proverbial scales of justice, and weighed with and against each other to determine if, on balance, the accused's right to a speedy trial has been violated. *See, e.g., Holmes v. State*, 938 S.W.2d 488, 489–91 (Tex.App.-Texarkana 1996, no pet.). In the case now before us, the State contends the trial court erred in weighing the *Barker* factors. We give deference to the trial court in evaluating factual issues and drawing inferences from the facts. *Kelly v. State*, 163 S.W.3d 722, 726–27 (Tex. Crim.App.2005). However, legal questions are reviewed de novo. *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997). The balancing test as a whole is purely a legal question. *Id.*

### 3. The Barker Factors and the Evidence Concerning Each

■ We now turn to our analysis of the *Barker* factors, mindful that " '[n]o one factor possesses talismanic qualities. . . .' "

*Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. 2182).

### A. The Length of the Delay

■ First, the length of the delay is to be considered. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *Zamorano*, 84 S.W.3d at 648–49. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.[12] The period of delay "is measured from the time the defendant is arrested or formally accused." *Shaw*, 117 S.W.3d at 889 (citing *Marion*, 404 U.S. at 313, 92 S.Ct. 455). Generally, a speedy trial claim will not be considered until a sufficient amount of time has elapsed so as to present a prima facie case that the State's continued delay is unreasonable. *Shaw*, 117 S.W.3d at 889 (citing *Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686; *Barker*, 407 U.S. at 530, 92 S.Ct. 2182). Once the defendant makes a prima facie showing, however, the reviewing court must consider this length of delay as one factor among the remaining factors in evaluating the accused's claim. *Shaw*, 117 S.W.3d at 889 (citing *Doggett*, 505 U.S. at 652, 112 S.Ct. 2686).

Fisher remained in jail for almost ten months from the time of his arrest on these felony charges until the State secured an indictment. On appeal, the State properly concedes this lapse of time is sufficient to establish a prima facie showing of an unreasonable delay. *Cf. State v. Owens*, 778 S.W.2d 135, 136–38 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd) (seven-month delay established prima facie showing). We, therefore, must determine what

---

**12.** The term "presumptively prejudicial" as used by the United States Supreme Court does not entail a statistical probability of prejudice to the defendant; "it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enqui-ry." *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing H. Richard Uviller, *Barker v. Wingo: Speedy Trial Gets a Fast Shuffle*, 72 Colum. L.Rev. 1376, 1384–1385 (1972)).

weight, if any, should be assigned to this first *Barker* factor and then proceed to the remaining factors. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *Zamorano*, 84 S.W.3d at 648–49.

Ten months is certainly a long time to wait for the State to make any effort to secure an indictment—especially in what appears to be a "run-of-the-mill" narcotics case.[13] However, when considering the length of delay only, ten months is not nearly as long as many cases that, after analyzing all the factors, have found no violation of the speedy trial requirement. *See, e.g., Dragoo v. State*, 96 S.W.3d 308 (Tex.Crim.App.2003) (three and one-half years); *State v. Munoz*, 991 S.W.2d 818 (Tex.Crim.App.1999) (seventeen months); *Shaw*, 117 S.W.3d 883 (thirty-eight months); *Kelly*, 163 S.W.3d 722 (seventeen months). We do not believe this ten-month period is such a long time that it should be accorded more than a slight weight against the State.

### B. The State's Proffered Reason

 Second, we must consider the reason or reasons the government assigns to justify the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Zamorano*, 84 S.W.3d at 648, 649–50. Sometimes the government's justification(s) under this second prong should be given greater or lesser weight, depending on the merit of the reason(s). *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. "A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government." *Id.* (referencing *Marion*, 404 U.S. at 325, 92 S.Ct. 455; *see Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957)). A "neutral" justification, such as an overcrowded docket or

mere negligence, "should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. "Finally, a valid reason, such as a missing witness, would serve to justify appropriate delay." *Id.*

Here, the State blamed the delay in seeking an indictment for this narcotics charge on a backlog at the Texas Department of Public Safety's Tyler crime laboratory. The State argued before the trial court (as it does on appeal) that it could not "file an indictment ... when [it did] not know the true nature of the substance to be alleged in that indictment." This would appear to be a meritorious justification for delay, especially when (as was the case here) there is no evidence in the record that the arresting officers had conducted any "field tests" that might otherwise give them a preliminary confirmation as to the identity of the suspected controlled substance. *See, e.g., Young v. State*, 183 S.W.3d 699, 704 (Tex.App.-Tyler 2005, pet. ref'd). Nevertheless, there are several problems with this proffered excuse.

First, the State submitted the drugs to the laboratory for testing December 30, 2004. Thus, it appears the initial nearly two-month delay was directly attributable to the State's failure to submit the drugs for analysis, not to the crime laboratory. Second, as both this State's Third Court of Appeals and the United States Supreme Court have noted, the State's "unreasonable delay" in a run-of-the-mill criminal case cannot be justified merely by suggest-

---

13. The State presented no evidence in the trial court that this case was complex or would be difficult to present to a grand jury or otherwise prosecute. *Contrast Harris*, 827

S.W.2d at 957 (death penalty case, fifty-one witnesses, 161 exhibits, five-month trial, thirteen-month delay between arrest and trial held reasonable given case complexity).

ing that the State has a backlog of cases or a shortage of staff. *Barker*, 407 U.S. at 538, 92 S.Ct. 2182 (White, J., concurring); *Martin*, 33 S.W.3d at 846–47. "The government must bear responsibility for failing to provide adequate resources to law-enforcement agencies." *Martin*, 33 S.W.3d at 847. Third, the State's own laboratory report indicated the testing was finished by June 9, 2005—a date nearly three months *before* the State finally sought or obtained an indictment. Thus, it would seem that nearly an additional three months of delay could not serve to excuse the State's delay in seeking an indictment from the grand jury. Finally, there is evidence in the record that the State does not always wait for the results of laboratory testing in drug cases. Fisher faced two other misdemeanor charges (one for possession of marihuana,[14] the other for possession of a dangerous drug[15]) stemming from the same November 10, 2004, arrest. Both charges were filed in Gregg County's County Court at Law Number 1 in 2004, apparently without the need for first receiving any confirmation from the Tyler crime laboratory about the identity of the alleged dangerous drug or the alleged weight of the marihuana.

Accordingly, we cannot conclude the State's proffered reason for delay—a backlog in the Tyler crime laboratory—entirely justifies the nearly ten-month delay in seeking and obtaining an indictment for the narcotics charges. Yet, in the realm of speedy trial jurisprudence, ten months is on the low end of the scale of violations, and it is only slightly longer than the time required to establish a prima facie case. We, therefore, believe this second *Barker* factor weighs only slightly against the State's case involving the narcotics charges.

*C. Fisher's Efforts to Assert His Speedy Trial Right*

Next, the reviewing court should consider the timeliness of the defendant's assertion of his or her right to a speedy trial. *Barker*, 407 U.S. at 529, 531–32, 92 S.Ct. 2182; *Zamorano*, 84 S.W.3d at 648, 651–52. This prong of the analysis permits the reviewing court

> to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection.

*Barker*, 407 U.S. at 529, 92 S.Ct. 2182.

Fisher did not assert his right to a speedy trial until August 26, 2005. This was after he had spent over nine months in jail. The record before us also reveals Fisher made no other efforts to obtain a pretrial release while the State awaited the laboratory results. Fisher did not request an examining trial. *See* Tex.Code Crim. Proc. Ann. art. 16.01 (Vernon 2005). He did not file a motion seeking a reduction in bond or release on personal recognizance after the State failed to secure an indictment within ninety days of his arrest. *See* Tex.Code Crim. Proc. Ann. art. 17.151 (Vernon Supp.2005). And there is no evidence he had attempted to resolve the charges with the State without the necessity of an

---

14. *See* Tex. Health & Safety Code Ann. § 481.121(b)(1), (2) (Vernon 2003) (class A or B misdemeanor, depending on total weight of marihuana, as long as weight less than four ounces).

15. *See* Tex. Health & Safety Code Ann. § 483.041(a), (d) (Vernon Supp.2005) (class A misdemeanor).

indictment. *See* Tex.Code Crim. Proc. Ann. art. 21.20 (Vernon 1989) (State may charge by way of filing information); *Chapple v. State,* 521 S.W.2d 280, 282 (Tex.Crim.App. 1975) (defendant may waive right to be tried on indictment).

Fisher argued in the trial court, as he now does on appeal, that he has no obligation to ask for an examining trial, a bond reduction, or other relief. While there is some logic to such argument in the context of the usual trial process (where, for example, the State has the burden of proof in a jury trial and our law places no affirmative duty on defendants to request examining trials or bond reductions in every case), Fisher's argument regarding this third factor is inconsistent with the express requirements of *Barker* itself. Stated differently, this third *Barker* factor requires the reviewing court to look for affirmative evidence that the *accused* asserted his or her right to a speedy trial with persistence and timeliness; it makes no requirement that the reviewing court look toward the State's conduct in evaluating this prong of *Barker.* Accordingly, to the degree Fisher now attempts (as he did in the trial court) to shift the focus of our analysis under this third *Barker* factor away from his actions (or lack thereof) and toward the State's conduct, Fisher is mistaken. *See Barker,* 407 U.S. at 529, 531–32, 92 S.Ct. 2182; *Zamorano,* 84 S.W.3d at 651–52.

The record shows that Fisher made no effort to assert his right to a speedy trial—or otherwise press the State for movement regarding his felony charges—for almost ten months. We agree with the State that this factor should weigh against Fisher. Given that the near-ten-month delay is only slightly past the threshold for making a prima facie showing to trigger the *Barker* inquiry, we conclude this third factor to be only of a slight weight—against Fisher's claim of being denied a speedy trial.[16]

*D. Evidence of Prejudice to Fisher Caused by the Delay*

 Fourth, the trial court should determine whether there is evidence of prejudice to the accused attributable to the State's delay. *Barker,* 407 U.S. at 531–32, 92 S.Ct. 2182; *Zamorano,* 84 S.W.3d at 648, 652–54. This factor is often the most elusive and difficult to quantify. "Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182. There are three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* Of these three interests, the last is the most important "because the inability of a defendant adequately to prepare his [or her] case skews the fairness of the entire system." *Id.*

No consideration need be given to the second subfactor as there was no evidence presented at the hearing on the motion to dismiss and nothing was presented showing Fisher's anxiety or concern.

---

**16.** Fisher's counsel argued to the trial court that he did, in fact, "approach the DA's office about this early on and never got any response back." Counsel did not further elaborate on the date he approached the State's office, the intended substance of those discussions, or even whether those attempted discussions concerned the unindicted felony charges or the misdemeanor charges. With- out such information, we are only left to speculate as to what weight, if any, should be accorded to counsel's assertion about having previously attempted to "approach" the State. We believe *Barker,* however, requires more than merely speculation before we could properly conclude this factor should not be weighted against Fisher.

Clearly, the most cogent argument of prejudice is that of pretrial incarceration. Fisher was incarcerated for more than nine months before filing the motion to dismiss. Therefore, he suffered a form of prejudice that a speedy trial was designed to protect. In weighing the degree of prejudice, we must also consider that other avenues were available to Fisher to ameliorate this type of prejudice—specifically Article 32.01 of the Texas Code of Criminal Procedure. Article 32.01 authorizes the release of a defendant on or before the last day of the next term of court after the 180th day of confinement, when no indictment or information is filed. TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon Supp. 2005). "By enacting Article 32.01, the legislature created a right in the accused to be free from the 'incidental punitive effect' of incarceration or being held to bail if the State is unable to obtain an indictment within a specified period of time." *State v. Condran*, 951 S.W.2d 178, 189 (Tex.App.-Dallas 1997), *pet. dism'd*, 977 S.W.2d 144 (Tex.Crim.App.1998). Fisher never attempted to invoke Article 32.01. The statements presented to the trial court at the hearing indicate Fisher was represented by counsel since "early on." That remedy, while not affording Fisher a dismissal with prejudice (as does a finding of a speedy trial violation), would have provided a method to avoid some of the pretrial incarceration. Other cases, involving lengthier pretrial incarceration than is present here, have held on the facts of each case that there was no speedy trial violation. In *Munoz*, the defendant had been incarcerated for seventeen months and the explanation for the delay was due to crowded dockets and plea negotiations. *Munoz*, 991 S.W.2d at 822. The speedy trial motion was filed after fifteen months of the seventeen-month delay. There was no showing of impairment of the defense.

The Texas Court of Criminal Appeals found it "easy" to determine that, under those facts, there was no speedy trial violation. In *Meyer v. State*, 27 S.W.3d 644 (Tex.App.-Waco 2000, pet. ref'd), the defendant had been in jail for twenty-three months; no valid reason was given for the delay; the speedy trial motion was properly asserted; and the court of appeals found only minimal prejudice from the incarceration and denied the speedy trial claim.

On appeal, the entire substance of Fisher's argument with respect to this fourth factor reads as follows:

> The State concedes that a delay of over eight months from arrest to trial is presumptively prejudicial.... Without an indictment the Appellee has no notice of what he may have to defend against.... Here, the Appellee suffered a presumptively prejudicial delay, even as measured from arrest to trial, without even the benefit of notice that would allow him to prepare a defense—as the state constitution gives him the right to have.

First, we disagree with Fisher's understanding of the State's concession on appeal. In its appellate brief, the State, citing *Harris*, 827 S.W.2d at 956, acknowledged "that a delay of more than eight months is sufficient to require an inquiry into all of the balancing tests." We do not interpret this acknowledgment by the State as a concession that prejudice is presumed by this period of delay.

Second, Fisher's brief otherwise offers no citation to the record and cites no authority for the proposition that a ten-month delay could ever be sufficient to presume prejudice. Nor has our research uncovered any caselaw stating a ten-month delay is, without any additional consideration or evidence, sufficient to allow a *pre-*

*sumption* of prejudice.[17] In *Barker,* the United States Supreme Court found there was minimal evidence the accused suffered any prejudice as a result of Kentucky's five-year delay in prosecuting him, even though he was incarcerated for ten months during the delay.

Of course, Barker was prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety. Moreover, although he was released on bond for most of the period, he did spend 10 months in jail before trial. But there is no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay. The trial transcript indicates only two very minor lapses of memory—one on the part of a prosecution witness—which were in no way significant to the outcome.

407 U.S. at 534, 92 S.Ct. 2182.

Finally, we review the record for any evidence that Fisher's defense of the case has been impaired—the most important consideration of the three prongs of the prejudice factor because it could affect the merits of the case and "skews the fairness of the entire system." *See id.* at 532, 92 S.Ct. 2182. Fisher presented no evidence that the defense of his case has been in any way prejudiced by the ten-month delay. We have independently reviewed the record in this case, and we see no evidence that Fisher's ability to defend himself against the State's impending charges was prejudiced at all by the State's delay in this case. There was no evidence, circumstantial or direct, that any witnesses for Fisher had died or suffered memory loss. There is no suggestion anywhere in the record that exculpatory evidence has been

lost or destroyed due to any delay. Nor is there any suggestion in the record that the delay might have increased the likelihood of Fisher receiving a more severe punishment should he be found guilty. This prong, therefore, weighs moderately against Fisher.

### 4. Weighing of the Barker Factors

Finally, the reviewing court must consider the four *Barker* factors in the aggregate, along with any other relevant circumstances as may be known by the reviewing court. *Barker,* 407 U.S. at 533, 92 S.Ct. 2182; *Zamorano,* 84 S.W.3d at 648, 654–55. To do this, the court should first evaluate the strength of each of the four *Barker* factors and then balance the respective strengths of those factors against the relative weights of the remaining factors "in light of the conduct of both the prosecution and the defendant." *Zamorano,* 84 S.W.3d at 648; *see also Barker,* 407 U.S. at 530, 92 S.Ct. 2182.

As previously stated, the length of the delay—nearly ten months—weighs slightly against the State and in Fisher's favor. The State's proffered explanation—a crime laboratory backlog—does not justify the entire delay. We, therefore, conclude the second *Barker* factor slightly favors Fisher's claim on these drug charges. But Fisher's failure to make any tangible efforts to assert his speedy trial right (other than the single motion, which was granted by the trial court) or to avail himself of other remedies weighs slightly against Fisher's claim. Finally, in weighing the overall prejudice factor, we note that the most important subpart is whether Fisher's case has been impaired, and there is no evidence of such impairment. Like-

---

**17.** When considering the prejudice factor, the United States Supreme Court has presumed prejudice to exist when the State's delay is more than six times that required to trigger the *Barker* review and only if the delay is not extenuated by the defendant's acquiescence or otherwise persuasively rebutted. *Doggett,* 505 U.S. at 656, 112 S.Ct. 2686.

wise, there is no prejudice shown in anxiety or concern of Fisher. So, two of the interests that the speedy trial right is intended to protect have not been affected, including the most important interest (impairment of defense). We further must weigh Fisher's pretrial incarceration against his failure to assert other remedies that could have alleviated a portion of the incarceration. Overall, in considering the relative weights of all three subfactors of prejudice, we do not find that it rises to a level favoring Fisher's claim of a violation of the speedy trial right.

After considering the relative weights of these competing *Barker* factors, along with the other relevant circumstances apparent from the record before us, we conclude the balance of the *Barker* factors weighs against Fisher's claim of a speedy trial violation. We, therefore, reverse the judgment of the trial court and remand this case for further proceedings in accordance with this opinion.