NO.
12-05-00382-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

            

ANTONIO DATWAN SCOTT,        §          APPEAL
FROM THE 7TH

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Antonio D.
Scott appeals his conviction for aggravated assault.  In five issues, Appellant argues that the
evidence is insufficient, that the trial court should have excluded evidence
from the punishment phase of the trial, and that he was denied his right to a
speedy trial.  We affirm.

 

Background

            Gerald
Petty lived in a small apartment complex near downtown Tyler, Texas.  On March 20, 2005, Petty had a conversation
with Jerome Scott who was working on his car near Petty’s apartment.  The men argued and Appellant, who is Scott’s
cousin, shoved Petty.  Petty did not know
Appellant, and he called the police to report the assault.








            Later
that evening, Scott appeared at Petty’s apartment, banging loudly on the front
door.  Petty answered the door, spoke
with Scott briefly, and slammed the door in his face.  Scott continued to bang on the door, and Petty
called the police to report that Scott had returned.  While he was on the telephone, five gunshots
rang out from the back of Petty’s apartment. 
The shots came in through a window and barely missed Petty.  No one saw the shooter, but two residents of
the apartment, Rhonda Lee and Gayle Brown, saw Appellant in the complex with
Scott.  Lee saw Appellant with Scott at
Petty’s front door and then saw Appellant go around to the back of Petty’s
apartment immediately before the shooting began.  Brown saw Appellant get something from a car,
and then shortly thereafter she saw him with a gun in his hand.  Brown saw Appellant go around to the back of
Petty’s apartment, but she was listening to music and did not hear any
shots.  Soon after Brown saw Appellant go
to the back of Petty’s apartment, Lee came to Brown’s apartment and told her
there had been shooting at Petty’s apartment. 


            A
Smith County grand jury indicted Appellant for aggravated assault for shooting
into Petty’s apartment.  A jury trial was
held, and Appellant was convicted as charged. 
The jury assessed punishment at fifteen years of imprisonment.  This appeal followed. 

 

Sufficiency
of the Evidence

            In
the first three issues, Appellant complains that the evidence is legally and
factually insufficient to support the jury’s verdict.  Specifically, Appellant contends that there
is insufficient evidence that he was the shooter or that the gun, which was not
recovered, was a deadly weapon. 

Standards of Review

            The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence. 
See Jackson v. Virginia, 443 U.S. 307, 315–16, 99
S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex. Crim. App. 2004); Willis v. State, 192
S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref’d).  Evidence is not legally sufficient if, when
viewing the evidence in a light most favorable to the verdict, no rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; see also Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993).[1]

            While
legal sufficiency review is all that is required by the U.S. Constitution, the
Texas Court of Criminal Appeals has determined that the Texas Constitution
requires further review of the factual sufficiency of the evidence.  Clewis v. State, 922 S.W.2d
126, 129–30 (Tex. Crim. App. 1996).  Our
review of the factual sufficiency of the evidence is without the light most
favorable to the verdict, and we determine whether the evidence supporting the
verdict is so obviously weak as to undermine our confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Watson
v. State, No. PD–469–05, 2006 Tex. Crim. App. LEXIS 2040, at *39 (Tex.
Crim. App. Oct. 18, 2006) (Evidence is factually insufficient only when
reviewing court objectively concludes that the great weight and preponderance
of the evidence contradicts the jury’s verdict.).

            Under
either standard, our role is that of appellate review, and the fact finder is
the sole judge of the weight and credibility of a witness’s testimony.  Wesbrook v. State, 29 S.W.3d
103, 111–12 (Tex. Crim. App. 2000).  The
fact finder may choose to believe all, some, or none of a witness’s
testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

            The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  A hypothetically correct jury charge “accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for
which the defendant is tried.”  Id.

            As
authorized by the indictment, the State was required to prove that Appellant
knowingly or intentionally threatened Gerald Petty with imminent bodily injury
and used or exhibited a deadly weapon.  Tex. Pen. Code Ann. § 22.02(a)(2)
(Vernon Supp. 2006).  A deadly weapon is
a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury, or anything that in the manner of
its use or intended use is capable of causing death or serious bodily
injury.  Tex. Pen. Code Ann. § 1.07(17)(a) (Vernon Supp. 2006).

Analysis

            Appellant
argues that Gayle Brown’s testimony that she saw a gun was insufficient to
prove that it was a deadly weapon and that the evidence generally was
insufficient to show that he was the shooter. 
While a firearm is a deadly weapon, it is at least conceivable that the “gun”
Brown saw was not a firearm or a deadly weapon. 
But it is undisputed that someone shot a firearm through the back window
of Petty’s apartment.  The jury saw
pictures of what were described as bullet holes in the curtains, the wall of
the apartment, and the television within the apartment.  The curtains had burn marks consistent with
the firing of a firearm, and the police recovered shell casings from outside
the apartment and bullet fragments from within the apartment.  Someone shot into Petty’s apartment, and it
was with a deadly weapon.[2] 

            There
is evidence that Appellant was the person who shot into Petty’s apartment.  Two witnesses testified that Appellant was in
the apartment complex immediately before the shooting.  One witness identified him as having a gun,
and both testified that he went behind Petty’s apartment immediately before the
shots were fired.  Furthermore, Petty had
an argument with Appellant and his cousin earlier in the day that had become
violent when Appellant shoved Petty. 
This is circumstantial evidence, but it is compelling nonetheless.  When viewed in the light most favorable to
the verdict, the evidence that Appellant went behind the apartment with a gun
immediately before the shooting and after arguing with Petty is sufficient for
a rational jury to conclude that Appellant was the shooter.

            With
respect to the factual sufficiency of the evidence, Appellant points out that
one of the witnesses had been previously convicted of misdemeanor charges.  Furthermore, he argues that Brown’s testimony
is “preposterous” because she was inside her apartment when she saw some of the
activity outside.  Appellant also notes
that Brown had consumed alcohol before the shooting.  Appellant suggests that Jerome Scott could
have been the shooter and, indeed, that Petty had guessed that he was.  These arguments are in the nature of
attacking the credibility of the witnesses and the inferences drawn from their
testimony.  Generally, it is for the jury
to determine which inferences it will draw and the weight to be afforded to the
testimony of a witness.  We exercise our
factual jurisdiction only when the great weight and preponderance of the
evidence contradicts the jury’s verdict or when the verdict is “clearly wrong”
or “manifestly unjust.”  Watson,
2006 Tex. Crim. App. LEXIS 2040, at *39. 


            The
evidence here does not contradict the verdict, and the verdict is neither
clearly wrong or manifestly unjust.  We
do not agree that Brown described something that she could not possibly have
seen.  She testified that her door faced
the apartment complex and was open, as were the curtains on her windows.  She also testified that she was outside when
Scott first went to Petty’s door.  Her
consumption of alcohol, as described, was not so copious that the jury could
not have believed her testimony.  The
jury’s conclusion, drawn from all of the testimony, that Appellant was the
shooter was not against the great weight and preponderance of the
evidence.  We overrule Appellant’s first
three issues.

Punishment
Phase Evidence

            In
his fourth issue, Appellant complains that the trial court erred when it
allowed a witness to testify during the punishment phase of the trial that
Appellant had bragged about getting away with a murder in Virginia.  

Applicable Law

            Evidence
of prior criminal acts is generally inadmissible except in a few narrowly drawn
exceptions.  See Tex. R. Evid. 404(b).  However, in the punishment phase of a
criminal trial, the veil is lifted, and the State may introduce evidence of
extraneous crimes or bad acts “that [are] shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be held
criminally responsible . . . .”  Tex. Code Crim. Proc. Ann. art. 37.07 §
3(a)(1) (Vernon Supp. 2006).  The jury determines
whether an extraneous act is proven beyond a reasonable doubt, but the court
must make a threshold determination that the jury could reasonably find beyond
a reasonable doubt that the defendant committed the extraneous act before it
allows evidence of the extraneous act to be admitted at the punishment phase of
a trial.  Mitchell v. State,
931 S.W.2d 950, 953 (Tex. Crim. App. 1996); Malpica v. State, 108
S.W.3d 374, 377 (Tex. App.–Tyler 2003, no pet.).

            The
decision to admit extraneous evidence is reviewed for an abuse of
discretion.  Malpica, 108
S.W.3d at 377.  Although the burden to
prove an extraneous act beyond a reasonable doubt is the same as is necessary
to secure a conviction for commission of a crime, the procedural safeguards
that require corroboration of extrajudicial confessions do not apply for
extraneous acts.  Id. at
378; see also Bible v. State, 162 S.W.3d 234, 247 (Tex.
Crim. App. 2005) (“Consequently, we hold that the corpus delicti doctrine does
not apply to extraneous offenses offered at the punishment phase of a capital
murder trial.”).  

Analysis

            Jerome
Scott testified that Appellant bragged about getting away with killing a man in
Virginia.  Appellant showed Scott and
others a long newspaper clipping with his picture at the top of it.  Scott testified that he did not read the
newspaper article, but that Appellant indicated that it pertained to the
murder.  Appellant’s mother testified
that she had lived in Virginia since 1999 and that Appellant had lived with her
during some portion of his life.

            Appellant
argues that there was an insufficient nexus between the assault in this case
and the murder in Virginia, that the extraneous act did not prove identity or
modus operandi for the alleged assault in this case, and that the lack of
specificity about the murder should have precluded admission of Appellant’s
statements.  The first argument is
misplaced.  In Shelton v. State,
41 S.W.3d 208, 218 (Tex. App.–Austin 2001, pet. ref’d), the case cited by
Appellant, the court of appeals held it was error to admit evidence that the
defendant had been a member of the Ku Klux Klan.  In that case, the State did not prove that
the organization, during a relevant time period, had committed unlawful or violent
acts or had endorsed such acts.  Id.  Therefore, the court reasoned that Shelton’s
involvement with the group was not connected to the crime, his membership in
the organization was irrelevant to sentencing. 
Id. (“It was not relevant to prove any aggravating
circumstances.”).  Reasonable minds could
differ as to whether membership in the Ku Klux Klan, without more, is a
relevant fact to consider during the punishment phase of a trial.  The fact that a defendant had previously
committed a murder, on the other hand, would be considered by a person of
reasonable caution to be relevant to the consideration of the appropriate
sentence. 

            With
respect to his second argument, Appellant is correct that his commission of a
murder in Virginia does not help to prove identity in this case and does not
provide evidence of a similar modus operandi. 
But those are preconditions for admission of evidence about extraneous
acts during the guilt/innocence phase of trial. 
See Tex. R. Evid.
404(b).  Rule 404(b) simply does not
apply in punishment phase proceedings.  See
Tex. Code Crim. Proc. Ann.
art. 37.07 §3(a)(1).  

            Finally,
Appellant cites James v. State, 47 S.W.3d 710, 714 (Tex. App.–Texarkana
2001, no pet.) for the proposition that proof of the date of an extraneous act
is necessary to admission of evidence regarding the act.  But, as Appellant forthrightly acknowledges,
the issue in James was the lack of notice to the defense.  Id. (“Further, the notice is
deficient in two respects.  It does not
give the time when the acts occurred, except to say they happened to all of the
victims when they were children.  It does
not specify the location where the bad acts occurred, either by county as
required by the statute, or in any other way.”).  

            Appellant
did not raise a complaint about notice when the State sought to introduce
evidence about the Virginia murder.  In
fact, Appellant’s trial counsel acknowledged that he had received information
about the murder prior to trial, and it appears that Appellant himself
discussed the allegation with the trial court at his bond hearing.  Appellant does not suggest that he did not
know which murder it was that the State was referring to, but rather that there
was a lack of specificity about the murder itself.  Appellant offers, and we can find, no support
for the conclusion that the date of prior misconduct must be proven.  The case cited by Appellant, James,
does not stand for that proposition.  We
agree, generally, that it would be better for the date of the occurrence to be
demonstrated, but Appellant’s confession that he had committed a murder is
something that the trial court could have concluded was relevant even without a
date of occurrence.   

            The
trial court did not abuse its discretion when it allowed Scott to testify about
Appellant’s extrajudicial confession to a murder.  Appellant could not be convicted of murder on
the basis of his confession without proof of a corpus delicti or corroboration
of the statement.  But those procedural
requirements do not apply in the context of extraneous acts introduced at a
punishment hearing.  In order to be
persuaded beyond a reasonable doubt that Appellant had committed a murder in
Virginia, all that was necessary was for the trial court to believe that
Appellant told Scott that he had committed the murder and that Appellant was telling
the truth.  Statements by party–opponents
are admissible, and we cannot accept Appellant’s implicit argument that the
trial court should not have believed his confession.  See Tex.
R. Evid. 801(e)(2)(a).  We
overrule Appellant’s fourth issue.

 

Speedy Trial

            In
his fifth issue, Appellant complains that he was denied the right to a speedy
trial.  Appellant filed a motion, pro se,
on September 21, 2005, requesting that the case be dismissed or that he be
released without posting bond.  Appellant’s
counsel filed a motion for a speedy trial on October 17, 2005.  In that motion he alleged that Appellant had
been arrested on March 24, 2005[3] and that trial had not been
scheduled.  Counsel indicated that
Appellant would be prejudiced if trial was not held on or before December 1,
2005.  Appellant had been indicted on
June 2, 2005. 

            On
October 20, 2005, the trial court granted the motion filed by Appellant’s
counsel and scheduled trial for October 31, 2005.  Subsequently, Appellant’s counsel filed a
motion for a continuance to allow additional time for him to prepare.  That motion was granted and trial was
rescheduled for November 7, 2005.  A
simultaneously filed State’s motion for a continuance was also granted and the
case was rescheduled for trial on November 14, 2005.  The trial began on November 15, 2005.  

Applicable Law

            The
Sixth Amendment to the United States Constitution guarantees the accused the
right to a speedy trial.  Zamorano
v. State, 84 S.W.3d 643, 647 n.5 (Tex. Crim. App. 2002) (citing
Barker v. Wingo, 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L. Ed. 2d 101
(1972); Dickey v. Florida, 398 U.S. 30, 37, 90 S. Ct. 1564, 26 L.
Ed. 2d 26 (1970)).  In addition, Article
I, section 10 of the Texas Constitution guarantees the accused in all criminal
prosecutions the right to a speedy and public trial.  Zamorano, 84 S.W.3d at 647
& n.6 (further referencing Tex. Code
Crim. Proc. Ann. art. 1.05 (Vernon Supp. 2006)).  When a defendant complains of the lack of a
speedy trial, we evaluate that claim using a nonexclusive four part balancing
test from Barker.  See
Shaw v. State, 117 S.W.3d 883, 888–89 (Tex. Crim. App.
2003).  The four factors from Barker
are the length of the delay, the reason for the delay, the defendant’s
assertion of his speedy trial right, and the prejudice to the defendant
resulting from the delay.  Id.


Analysis

            While
the right of a person to represent himself is almost absolute, a defendant has
no right to hybrid representation, that is to represent himself and also to
have a lawyer represent him.  Meyer
v. State, 27 S.W.3d 644, 648 (Tex. App.–Waco 2000, pet. ref’d); see
also Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App.
1989).  Therefore, the trial court need
not entertain motions filed by a defendant on his own behalf when the defendant
is represented by counsel.  Meyer,
27 S.W.3d at 648; Hazelwood v. State, 838 S.W.2d 647, 649 (Tex.
App.–Corpus Christi 1992, no pet.). 

            Appellant
was represented by counsel.  Therefore,
the trial court did not err when it did not rule on Appellant’s pro se motion
to dismiss for lack of a speedy trial. 
With respect to the motion filed by counsel (“Appellant’s motion”), the
trial court gave all the relief that was requested.  Counsel requested that the case be tried
before December 1, 2005.  The case was
tried before that date.

            Even
if granting all the relief that was requested is not sufficient to resolve this
matter, Appellant’s right to a speedy trial was not violated.  The first Barker factor is the
length of the delay.  Shaw,
117 S.W.3d at 889.  The court of criminal
appeals has noted that delays of longer than eight months are long enough to
require analysis of the remaining Barker factors.  Harris v. State, 827 S.W.2d
949, 956 (Tex. Crim. App. 1992).  The
delay in this case is almost eight months. 
Even if further inquiry is required, this factor can only weigh slightly
against the State, if at all.  See State
v. Fisher, 198 S.W.3d 332, 338 (Tex. App.–Texarkana 2006, pet. ref’d)
(Ten month delay weighs slightly against State.).

            The
second factor is the reason for the delay. 
Shaw, 117 S.W.3d at 889. 
Because Appellant’s motion for a speedy trial was granted, there was no
hearing and so the State was never called upon to offer any justification for
the delay.  This factor does not weigh
one way or the other, but there is no evidence that the State sought to delay
the trial other than for a short continuance to which Appellant did not object.

            The
third factor is Appellant’s assertion of his right to a speedy trial.  Shaw, 117 S.W.3d at 890.  Appellant did assert his right to a speedy
trial.  His motion was granted, and he
was tried within the time period he suggested was required.  His motion was filed on October 17, 2005, and
he was tried less than a month later. 
Appellant was afforded all the relief he requested, and he was given a
trial shortly after his motion was filed. 
Under the circumstances, this factor cannot weigh in favor of a
violation of Appellant’s right to a speedy trial.

            The
fourth factor is the prejudice to Appellant. 
Shaw, 117 S.W.3d at 890. 
Courts have recognized that, to some extent, incarceration itself can
cause harm to an accused person.  Barker,
407 U.S. at 532, 92 S. Ct. at 2193. 
Additionally, the passage of time may cause witnesses to become
unavailable or to forget what they observed. 
Id.  Appellant has
not shown that he was prejudiced by oppressive pretrial incarceration or that
he was prejudiced in any other way. 
Furthermore, by the terms of his own motion, Appellant would not have
been harmed unless his case was tried after December 1, 2005.  He was tried before that date.  This factor does not weigh in favor of a
violation of Appellant’s rights.

            On
balance, we hold that Appellant’s right to a speedy trial was not
violated.  Even if the delay between
arrest and trial was long enough to trigger an inquiry, there is no evidence
that Appellant was prejudiced by the delay. 
His motion for a speedy trial was granted and a trial held before the
date he requested.  We overrule Appellant’s
fifth issue.

 

Disposition

            We
affirm the judgment of the trial court.

 

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered December 1, 2006.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] Appellant asserts that the evidence is legally
insufficient under both the U.S. Constitution and Texas law.  He does not argue that the standards are
different.  See Prible v. State,
175 S.W.3d 724, 730 (Tex. Crim. App. 2005); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988).





[2]Any
question about whether the gun was a deadly weapon is immediately dispelled by
State’s exhibit 30, which depicts Petty’s television.  The screen is devastated by two bullet holes
and appears to be nearly equal parts broken and unbroken glass. 





[3] The record does not show that Appellant was
arrested on that day, but the State concedes as much in its brief.