

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00100-CR

CORY WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 08F0593-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Over six years after the event which gave rise to charges being filed against him, Cory Williams entered a plea of guilty to the offense of assault on a public servant and was sentenced to five years' imprisonment. This term of imprisonment was ordered to be served consecutively with another sentence for which he had already been incarcerated at the time of the alleged offense. Not surprisingly, Williams complains that he was denied his right to a speedy trial, this being his sole issue on appeal.

More precisely, the timeline involving the case against Williams is as follows: (1) Williams was alleged to have stuck a homemade spear into the leg of a guard at the prison in Bowie County, Texas, where he was incarcerated on or about July 24, 2006; (2) over two years later (September 11, 2008) the State finally indicted Williams, alleging that he assaulted a public servant; (3) almost four years after having been indicted (August 13, 2012), Williams filed a motion to dismiss the indictment, claiming that his Constitutional right to a speedy trial had been violated; and (4) some eight months after Williams filed his motion to dismiss (April 30, 2013), the trial court finally held a hearing on his motion wherein it denied same, then heard his plea of guilty and sentenced him. The only things that appear to have happened with any alacrity are that (1) the trial court promptly denied the motion to dismiss after having considered it, (2) Williams forthwith entered a plea of guilty to the charge, and (3) Williams was immediately found guilty and sentenced.

The Sixth Amendment to the United States Constitution guarantees the citizenry the right to a speedy trial. U.S. CONST. amend. VI. This right protects the accused from anxiety and

2

concern that accompanies a public accusation, seeks to avoid impairment to a defense, and assures freedom from oppressive pretrial incarceration. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). Although some matters may be waived by a defendant's failure to pursue them, it remains the State's responsibility to bring a defendant to trial. *Barker v. Wingo*, 407 U.S. 514, 529–30 (1972); *Purgason v. State*, 405 S.W.3d 171 (Tex. App.—Amarillo 2013, pet. filed). However, even though an appellant has no duty (or even ability) to bring himself to trial, he does have a responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282 (language abstracted from the *Barker* opinion). Should a complainant show himself entitled to relief due to a violation of his right to a speedy trial, the only possible remedy is dismissal of the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973).

In determining whether an accused has been denied his right to a speedy trial, we are to use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 530. The factors to be weighed in the balance include, but are not necessarily limited to, (1) the length of the delay, (2) the reason or reasons for the delay, (3) the assertion by the defendant of his speedy trial right, and (4) the prejudice to the defendant resulting from the delay. *Id*. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id*. at 533; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

These four commonly-called "*Barker* factors" are assigned varying weights by the court according to the individual facts of the case, placed on the appropriate sides of the proverbial

scales of justice, and weighed with and against each other to determine if, on balance, the accused's right to a speedy trial has been violated. *See, e.g.*, *Holmes v. State*, 938 S.W.2d 488, 489–91 (Tex. App.—Texarkana 1996, no pet.). We give deference to the trial court in evaluating factual issues and drawing inferences from the facts. *Kelly v. State*, 163 S.W.3d 722, 726–27 (Tex. Crim. App. 2005). In contrast to factual issues, legal questions are reviewed de novo. *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). Implementation of the balancing test as a whole is purely a legal question. *Id.*; *State v. Fisher*, 198 S.W.3d 332, 337 (Tex. App.—Texarkana 2006, pet. ref'd).

**Length of the Delay**

The trial court conducted a hearing on the issue of the claim of the violation of Williams' right to a speedy trial. The State and defense both recognized the inordinate length of the delay in this case between the offense and the date of trial.

Extended governmental delay in prosecuting entitles a defendant to relief based on the right to a speedy trial. *See Doggett v. United States*, 505 U.S. 647, 652 (1992); *Barker*, 407 U.S. at 530–31. Most delays of eight months or over are considered presumptively unreasonable and prejudicial. *Doggett*, 505 U.S. at 652 n.1. Calculated from the date of indictment, over four and one-half years elapsed before trial, and eight months beyond the date that Williams filed his motion to dismiss. Because the length of the delay is nearly seven times the bare minimum needed to trigger examination of the claim, this factor weighs very heavily against the State. *See Dragoo*, 96 S.W.3d at 314.

4

**Reasons for the Delays**

The only attempted rationale given for the extraordinary length of the delays was provided by the trial judge, who stated that this case had been originally filed on the docket of a trial judge who had retired in the interim[1] and then transferred to the judge hearing the case about a year and a half afterward.

Accordingly, there has been no real attempt by the State to justify the extraordinary lengths of time that transpired during three critical time intervals: (1) the time between the occurrence giving rise to the charge and the indictment, (2) the time between Williams' having filed a motion to dismiss pursuant to the denial of a speedy trial and the conduct of a hearing on that motion, and (3) the time between the handing down of the indictment and the actual hearing on the merits. The only attempt at explaining the delay was made by the trial judge in observing what he believed had caused some of the delays in the time frames after the indictment was handed down. The State seems to assume the position (without providing any explanation) that because it is not uncommon for there to be an extended time lag between the incident giving rise to charges that take place in a prison and the filing of those charges, that lapse in time should not be considered. The simple observation that the extended period of time is common is no explanation to satisfy the absence of a speedy trial. Accordingly, there is no adequate reason given for the two-year lapse of time between the alleged commission of the offense and the filing of charges, a time frame that weighs substantially against the State.

---

[1]This Court takes judicial notice that the retired judge was replaced by the person who was district attorney at the time the indictment was returned and who, therefore, would have been disqualified from hearing the case.

5

There is no evidence that Williams pursued a hearing or ruling on his motion to dismiss. Accordingly, that eight-month time period weighs slightly against Williams.

As noted above, the trial judge opined that the case had bounced from one district court docket to another as a possible reason for delay. The mere press of business is not an adequate excuse. *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003). No explanation for this delay is offered except for the court's overcrowded (or unmanaged) docket. Although this justification is not weighed heavily against the State, it is, nevertheless, weighed against the State because it is the government's responsibility to bring criminal cases to trial. *See Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002); *Stock v. State*, 214 S.W.3d 761, 766 (Tex. App.—Austin 2007, no pet.).

The State was unable to offer any other explanation for the failure on its behalf to pursue the prosecution. However, as discussed in *Dragoo*, the lack of an assigned and explained reason for the delay does not allow a reviewing court to presume either a deliberate attempt by the State to prejudice the defense or a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314. Accordingly, we find that the factor weighs against the State and in favor of Williams, but not heavily in his favor.

**Williams' Assertion of His Right**

Although it is the primary burden of the government to bring an accused to trial, the defendant does bear the responsibility of asserting his right to a speedy trial. *Barker*, 407 U.S. at 529–30. An accused's failure to assert that right will make it difficult to prove he was denied a speedy trial. *Id.* at 532; *see also Dragoo*, 96 S.W.3d at 314 (failure to timely demand speedy

6

trial strongly suggests defendant did not really want trial and suffered no prejudice by not having one). "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Cantu*, 253 S.W.3d at 283 (citing *Barker*, 407 U.S. at 534–36); *Bosworth v. State*, No. 06-12-00058-CR, 2013 WL 563321, at *8 (Tex. App.—Texarkana Feb. 15, 2013, pet. ref'd); *see also Dragoo*, 96 S.W.3d 314–15 (defendant quietly acquiesced to delay of three and one-half years by failing to assert speedy-trial right until day before trial—not waiver of right, but failing to assert right earlier indicated he did not really want speedy trial and, thus, weighed heavily against finding violation of speedy-trial right).

In this case, the motion ultimately filed by Williams pertaining to his complaint that he had not received a speedy trial was labeled, "Motion to Dismiss Indictment – Denial of a Speedy Trial." Williams does not intimate or suggest that he was seeking a speedy trial, only that he sought to avoid the charges because he had not been granted a trial within a reasonable period of time. Under these facts, some of the considerations set out in *Barker* simply are not relevant. For example, the high court's concerns about extended incarceration are not relevant to the circumstance that existed with regard to Williams because he was already in jail on a different conviction and remained there under that conviction for the entire time. Because of that, this Court's observation that "the clock ticks slower for one incarcerated"[2] fails to apply in this circumstance; the charges of which Williams currently stood accused were not the cause of his incarceration.

---

[2] *Bosworth*, 2013 WL 563321, at *12.

As applied under Texas law, a request that the court dismiss the charges for a speedy-trial violation, rather than a request for a prompt trial setting, attenuates the strength of a speedy-trial claim because it indicates more of a desire to avoid trial rather than a desire to obtain a speedy trial. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983); *Barringer v. State*, 399 S.W.3d 593, 601 (Tex. App.—Eastland 2013, no pet.); *Orosco v. State*, 827 S.W.2d 575, 577 (Tex. App.—Fort Worth 1992, pet. ref'd). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281.

Although Williams did not agree to any extensions or continuances and, thus, did not waive his right, he also sought a speedy trial neither early in the process nor often during the extended period of time between the alleged commission of the offense and the ultimate trial. Accordingly, his conduct speaks loudly that his desire was to avoid a trial and obtain a dismissal, not to seek a speedy trial. Taking into account the extended period during which he could have complained of the failure of the system to schedule him for trial (but failed to do so), this weighs heavily against finding a speedy-trial violation.

**Prejudice from Delay**

We analyze prejudice to an accused in light of the interests that a speedy-trial right is designed for protection of the accused: (1) the prevention of oppressive pretrial incarceration, (2) minimalization of the accused's anxiety and concern during the period between the alleged commission of the offense and the time of trial, and (3) limitation of the possibility that the accused's defense will be impaired through delay. *Id.* at 285. Of these, the third is the most serious because a defendant's inability to prepare his case adequately "'skews the fairness of the

8

entire system.'" *Dragoo*, 96 S.W.3d at 315 (quoting *Barker*, 407 U.S. at 532). In this particular incidence, the first interest (prevention of oppressive pretrial incarceration) is a total nullity because Williams was already incarcerated at the time of the incident and continued to be incarcerated for the entire time due to his prior conviction on other charges. There is a certain amount of amelioration of the second consideration (anxiety and concern) due to the fact of his continued incarceration and because there was no evidence given that Williams suffered any such anxiety from worrying over his fate concerning this charge.

The final consideration (that Williams' ability to defend against the charges was compromised due to the passage of time) is the most troublesome here. However, an unusual situation presents here: there is affirmative evidence that the identity of potential witnesses was known by but disposed of by the State before this case was actually filed against Williams and before he was indicted. Williams maintains that the delay in pursuit of prosecution of this case prejudiced his ability to defend the case against him because the names of potential witnesses to the event were unavailable because the State intentionally destroyed records that would reveal that information.[3] However, it is also important that the information to which Williams now directs his attention did not exist at the time charges were formally lodged against him and that Williams has waited a very long time before complaining of that loss.

It is, however, not clear that we should completely disregard the time between accusation and indictment. The speedy-trial right, although often applied through a measurement from indictment, has not been so limited by the high court. In that vein, the Court held,

---

[3]There is no intimation that this destruction of records was done with the purpose of compromising Williams' defense. Rather, the destruction of such records resulted from the regular business practices of the prison.

9

> Once triggered by arrest, indictment, or other official accusation, however, the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized.

*Doggett*, 505 U.S. at 655 (footnote omitted).

Although there is no evidence given by either Williams or the State to bolster their respective arguments, their positions were made clear through arguments presented to the trial court by each. As voiced by Williams' counsel and by the content of his motion to dismiss, the chief concern regarding the delay was that the prison destroyed the records that would have shown the identity of other inmates in the area where the assault occurred; Williams posits that the absence of these records limited his ability to determine the identity of potential exculpatory witnesses. The State asserted that these records had been destroyed within six months of their creation as a regular event; as a result of this practice, the records would have been destroyed well before an indictment was even returned.[4] Thus, the State suggests, no harm was occasioned by the State's delay in proceeding to trial, because any harm to Williams would have occurred before the indictment was handed down. The State made no meaningful effort to excuse away the delay between the delivery of the indictment and the eventual hearing on the motion to dismiss.

We observe that Williams neither made any assertion that there was no such assault as claimed nor has he intimated that any potential witness whose name had been destroyed by the State could provide any exculpatory information on his behalf. It would appear that in the absence of any defensive theory, the potential to interview those who might have been in the area

---

[4]The record also contains a stipulation of evidence signed by counsel for both the State and Williams that supports the discussion set out above.

10

at the time of the alleged assault would seem to be nothing more than a simple fishing expedition, not likely to produce sufficient fruit to change the result. We decline to speculate that the destroyed information would have produced exculpatory material.

Accordingly, we conclude that Williams has shown little or no prejudice resulting from the delay. Accordingly, that factor weighs in favor of the State.

**Conclusion**

It has been said that we should apply "common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281. Williams was incarcerated and under the State's complete control, and thus could not have exercised a freedom to seek the identity and contact those witnesses in a timely manner. The State eliminated the information that might have somehow led to witnesses to the event, leaving only the injured officer to testify. The delay was attributable to the State, and the reasons for the delay were weak, at best. Against that we weigh Williams' failure to actively complain at an earlier point in the proceeding and his failure to seek a speedy trial rather than focusing so narrowly on the ultimate remedy of dismissal of the indictment. Williams' incarceration for the period of delay was not attributable to the delay, and there is nothing to show that any evidence which might have been elicited could have been favorable. The argument is based on the pure inability to locate the witnesses to ask them if they had favorable evidence, and we are unconvinced that under these facts and allegations prejudice has been strongly shown.

11

Accordingly, we overrule Williams' issue and affirm the judgment.


Bailey C. Moseley
Justice

Date Submitted:     September 5, 2013
Date Decided:       October 2, 2013

Do Not Publish