ACCEPTED
03-14-00407-CR
4070209
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/9/2015 11:30:04 AM
JEFFREY D. KYLE
CLERK

03-14-00407-CR

COURT OF APPEALS

IN THE THIRD JUDICIAL DISTRICT OF TEXAS

AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/9/2015 11:30:04 AM
JEFFREY D. KYLE
Clerk

| | |
|---|---|
| JERRYL ROBINSON,     APPELLANT | § |
| | § |
| VS. | § |
| | § |
| THE STATE OF TEXAS, APPELLEE | § |

ON APPEAL FROM THE 274th DISTRICT COURT OF
COMAL COUNTY, TEXAS
THE HONORABLE GARY L. STEEL, JUDGE PRESIDING
TRIAL COURT CASE NO. CR2013-349

**BRIEF OF JERRYL ROBINSON, APPELLANT**

Respectfully submitted,

Hazel Brown Wright Reneau, PLLC
391 Landa Street
New Braunfels, TX 78130
Tel: 830-629-6955
Fax: 830-629-2559

By__*/s/ Marilee Hazel Brown*_____
    Marilee H. Brown
    SBN# 24046044
    marilee@hazelbrownlaw.com

**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT NOT REQUESTED**

1

# IDENTITY OF PARTIES AND COUNSEL

APPELLANT—JERRYL ROBINSON

| Attorney at Trial | Michael Zamora<br>211 Babcock Rd<br>San Antonio, TX 78201<br>Tel: (210) 738-0067<br>Fax: (830) 980-2021<br><br>David M. Collins<br>206 E. Locust St.<br>San Antonio, TX 78212<br>Tel: (210) 212-6700<br>Fax: (210) 249-0116 |
|---|---|
| Attorney on Appeal | Marilee H. Brown<br>391 Landa Street<br>New Braunfels, TX 78130<br>Tel: (830) 629-6955<br>Fax: (830) 629-2559<br>marilee@hazelbrownlaw.com |

APPELLEE – STATE OF TEXAS

| Attorney at Trial | Jennifer Tharp<br>DISTRICT ATTORNEY<br>Comal County District Attorney<br>150 N. Seguin Avenue<br>New Braunfels, TX 78130<br>Tel: (830) 221-1200<br>Fax: (830) 608-2008<br><br>Abigail Whitaker<br>Christine P. Rankin<br>Assistant District Attorney<br>150 N. Seguin Avenue<br>New Braunfels, TX 78130<br>Tel: (830) 221-1200<br>Fax: (830) 608-2008 |
|---|---|
| Attorney on Appeal | Josh Presley<br>Assistant District Attorney |

| | 150 N. Seguin Avenue<br>New Braunfels, TX 78130<br>Tel:  (830) 221-1200<br>Fax:  (830) 608-2008 |
| --- | --- |

# TABLE OF CONTENTS

## Contents

BRIEF OF APPELLANT ................................................................................................ 8

PRIOR OR RELATED APPEALS ................................................................................. 8

STATEMENT OF CASE ............................................................................................... 9

GROUND OF ERROR ONE ........................................................................................ 11

GROUND OF ERROR TWO ....................................................................................... 12

GROUND OF ERROR THREE .................................................................................... 12

STATEMENT OF FACTS ........................................................................................... 12

SUMMARY OF THE ARGUMENTS .......................................................................... 15

GROUND OF ERROR ONE ........................................................................................ 19

    Standard of Review ................................................................................................ 19

    *Authorities* ............................................................................................................. 20

    *Analysis* ................................................................................................................. 23

GROUND OF ERROR TWO ....................................................................................... 30

    Standard of Review ................................................................................................ 30

1) Mr. Michael Zamora's conduct preceding Appellant's trial was so remiss as to require Appellant to provide his own legal relief entitled to him under the United States and Texas Constitutions to no avail. ............................................................................................ 31

    Authorities ............................................................................................................. 31

    Analysis ................................................................................................................. 31

2) Mr. Collins' assistance was clearly ineffective under the *Strickland* test as he deprived Appellant of a fair trial by barring his client from asserting the most basic defenses: a) counsel barred himself from disputing the evidence; b) counsel barred his client from requesting the lesser included offense be considered. ............................................................. 33

    Authorities ............................................................................................................. 33

    Analysis ................................................................................................................. 34

3) David Collins provided per se ineffective assistance of counsel as he barred his client from requesting a lesser included offense in the charge to the jury ................................................. 35

    Authorities ............................................................................................................. 35

    Analysis ................................................................................................................. 36

4) Trial counsel's lack of inquisition into the quantity, value, and other alternatives caused his performance to be grossly deficient, prejudicing appellant's right to a fair and reliable trial .. 37

Authorities.................................................................................................................. 37

Analysis..................................................................................................................... 38

5) Counsel at trial abrogated his duty to investigate the physicality of the evidence in order to obtain knowledge about the plausibility of the accusations against his client causing appellant to be stripped of any possibility of a Fair trial ........................................................... 39

Authorities.................................................................................................................. 39

Analysis..................................................................................................................... 39

GROUND OF ERROR THREE ........................................................................................ 40

THE EVIDENCE ADDUCED AT TRIAL IS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION AND PUNISHMENT AS NO DIRECT EVIDENCE WAS PROVIDED TO SUBSTANTIATE THE STATE'S ALLEGATIONS AS TO THE QUANTITY OF CARTONS WITHIN THE STOLEN BOX OR LINK THE NUMBER OF CARTONS NO LONGER IN INVENTORY TO APPELLANT ........................................................... 40

A.  Standard of Review............................................................................................... 40

B.  Discussion ............................................................................................................ 41

Authorities................................................................................................................ 41

Analysis.................................................................................................................... 42

CONCLUSION.............................................................................................................. 43

PRAYER........................................................................................................................ 44

# TABLE OF AUTHORITIES

Cases

*Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972...... 22, 23, 25, 27

*Blumenstetter v. State*, 117 S.W.3d 541, 2003 Tex. App. LEXIS 8387 (Tex. App.—Texarkana 2003) ........................................................................................................................ 27

*Chapmans v. Evans*, 744 S.W.2d 133, 135 (Tex. Crim. App. 1988 ............................... 25

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ..................................... 41

*Deeb v. State*, 815 S.W.2d 692, 704 (Tex. Crim. App. 1991) ......................................... 25

*Doggett v. US*, 505 U.S. 647, 655-56 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992). ....................... 28

*Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) ....................................... 26

*Ex parte Overton*, 444 S.W.3d 632, 641 (Tex. Crim. App. 2014) ................................... 31

*Ex parte Skinner*, 2009 Tex. App. LEXIS 6340 *6 (Tex. App—Corpus Christi 2009, mem. opp. ..................................................................................................................... 19

*Ex parte Skinner*, 2009 Tex. App. LEXIS at *8-9 ......................................................... 21

*Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990) .................................. 39

*Flores v. State*, 576 S.W.2d 632, 634 (Tex. Crim. App. 1978) ...................................... 37

*Granek v. Tex. State Bd. Of Med. Exam'rs*, 172 S.W.3d 761, 773 (Tex. App.—Austin 2005, no pet.) .................................................................................................................... 29

*Hull v. State*, 699 S.W.2d 220, 221-224 (Tex. Crim. App. 1985). ................................. 25

*Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ................. 40

*King v. State*, 649 S.W.2d 42, 43 (Tex. Crim. App. 1983) ............................................. 39

*Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ....................................... 33

*Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) ................................. 31

*Miniel v. State*, 831 S.W.2d 310, 324 (Tex. Crim. App.) .............................................. 37

*Moore v. Arizona*, 414 U.S. 25, 26-27, 38 L. Ed. 2d 183, 94 S. Ct. 188 (1973) (per curiam)...... 27

*Nelson v. Hargett*, 989 F.2d 847, 857 (5th. Cir. 1993) ................................................. 21

*Okonkwo v. State*, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013) .................................. 33

*Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) ............................... 22, 26

*Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006 .................................. 31

*State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999) ...................................... 22

*State v. Munoz*, 991 S.W.2d 818, 821-23 (Tex. Crim. App. 1999) .................................. 26

*State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio, 1998, no pet.)................. 22, 26

*State v. Ybarra*, 942 S.W.2d 35, 36-37 (Tex. App.—Corpus Christi, 1996, pet. dism'd) ........... 19

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) 30, 31, 35, 37

*Tarango v. State*, 2007 Tex. App. LEXIS 2247 (Tex. App.—El Paso 2007, pet. ref'd) .............. 35

*Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) .................................... 31

*Turner v. State*, 2014 Tex. App. LEXIS 8706 (Tex. App.—Austin 2014, pet. ref'd) ................ 33

*Washington v. State*, 326 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ...... 19

*Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009)................................... 30

*Wood v. State*, 4 S.W.3d 85, 87 (Tex. App.—Fort Worth, 1999, pet. ref'd) ...................... 35

*Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) ...................... 19, 20, 22, 23

Other Authorities

*Ex parte Chambers*, 612 S.W.2d 572, 573-74 (Tex. Crim. App. 1981) ...................................... 24

Sixth Amendment of the United States Constitution .................................................................. 25

Speedy Trial Act ....................................................................................................................... 23

Texas Constitution .............................................................................................................. 20, 25

United States Constitution ......................................................................................................... 20

*United States v. MacDonald*, 456 U.S. 1, 7, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982).............. 21

Statutes

*Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)..................................................... 41

*Roberson v. State*, 80 S.W.3d 730, 742 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ........... 41

Tex. Code of Crim. Proc. art. 32.01 ..................................................................................... 21, 24

Tex. Penal Code §31.03 ............................................................................................................. 41

Texas Code of Criminal Procedure article 11.14 .................................................................. 21, 24

03-14-00407-CR

# COURT OF APPEALS

# IN THE THIRD JUDICIAL DISTRICT OF TEXAS

# AT AUSTIN, TEXAS

JERRYL ROBINSON, APPELLANT §
 §
VS. §
 §
THE STATE OF TEXAS, APPELLEE §

## BRIEF OF APPELLANT

ADDRESS TO THE COURT:

TO THE HONORABLE COURT OF APPEALS:

Appellant, Jerryl Robinson, respectfully submits this brief, appealing from a final conviction after a jury trial on the merits in the 274th Judicial District Court of Comal County, Texas, wherein Appellant was convicted by a jury of one count of Theft – a state jail felony enhanced by prior theft convictions to a second degree felony and sentenced by the jury to fifteen (15) years confinement.

## PRIOR OR RELATED APPEALS

There are no prior related appeals.

## STATEMENT OF CASE

The following is a brief timeline to aid the Court in its understanding of the events:

i. November 17, 2011, Appellant was arrested via an arrest warrant and provided his warnings by a Magistrate on November 18, 2011 [CR, pp. 7-9; Supp. CR, pp. 15].

ii. February 27, 2012, after having been incarcerated for over 90 days, Appellant filed a handwritten Motion to Release (hereafter referred to as Appellant's "90 day petition") [CR, pp.]. A hearing was never held.

iii. June 10, 2013, after having been held on bail for more than 180 days, Appellant, by his own handwritten motion, properly filed a Petition for Writ of Habeas Corpus for Discharge for Delay (hereafter referred to as Appellant's "180 day writ") as he was held on bail for his appearance to answer criminal accusations and no indictment had been presented after 180 days from his date of commitment [CR, pp. ]. Despite Appellant's request, no hearing was ever held on this writ.

iv. August 5, 2013 - With no action from the trial court on Appellant's 180 day writ, Appellant filed a petition for writ of mandamus (hereafter referred to as Appellant's "petition for mandamus relief") with the Third Court of Appeals

requesting the trial court be ordered to hear Appellant's 180 day writ [Supp. CR, pp. 31].

v. August 30, 2013, the Third Court of Appeals issued a memorandum opinion denying mandamus relief stating "since relator filed his petition, the trial court has acted on the petition" [Supp. CR, pp. 32].

vi. August 14, 2014, Appellant was charged by indictment with two counts of theft: One for theft of property with a value of less than $1,500; the other for theft of property with a value of more than $1,500 but less than $20,000 [CR, pp. 10-13]. The indictment contained six enhancement paragraphs alleging prior offenses of various natures. [CR, pp. 10-13].

Attorney Michael Zamora was appointed counsel directly after Appellant's arrest in 2011, however, on September 26, 2013, Mr. Zamora withdrew and new counsel, Mr. David Collins was appointed [CR, pp. 14]. Appellant's second attorney filed a motion to sever the two counts with a brief in support thereof on January 30, 2014. [CR, pp. 37-49]. A hearing was held on February 26, 2014, after which, Appellant's motion was denied. [Supp. CR, pp. 49]. Appellant pled not guilty and a jury trial commenced as to guilt/innocence on June 9, 2014 [RR, Vol. 2, pp. 4]. Once the State rested its case in chief, on June 10, 2014, Appellant, through his counsel, moved for a Directed Verdict, in writing and orally [RR, Vol. 3, pp.122-128]. Both

motions were denied [RR, Vol. 3, pp. 125]. The jury then heard evidence and determined punishment on June 11, 2014 [RR, Vol. 4, pp. 101].

On June 11, 2014 the jury entered a verdict of "Guilty" as to Count One of the indictment. [CR, pp. 74; RR, Vol. 3, pp.152]. Count Two was never read to the jury due to it being struck during motions for directed verdict. [RR, Vol. 3, pp. 125-127]. Appellant plead "true" to the enhancement paragraphs of the indictment and the jury sentenced Mr. Robinson to 15 years in prison. [RR, Vol. 4 pp. 19; CR, pp. 77-86, 101-102]. Appellant timely filed his notice of appeal on December 3, 2012. [CR, p. 211].

The reporter's record was filed on October 3, 2014. The clerk's record was filed on July 17, 2014. Appellant's Brief was originally due on or about November 3, 2014, but counsel on appeal was required to participate in a month-long jury trial. Appellant filed two Motions for Extension of Time to File Appellant's Brief, which were granted. Appellant's Brief is hereby filed on February 6, 2015, complaining of three points of error.

## GROUND OF ERROR ONE

**The trial court's error led to a substantial, presumptively prejudicial and unnecessary delay, which subjected Appellant to oppressive pretrial incarceration, high levels of anxiety and concern, and impaired Appellant's ability to adequately prepare his defense as nearly twenty one (21) months elapsed between the time Appellant was arrested and the time Appellant was eventually formally indicted.**

11

## GROUND OF ERROR TWO

**Both counsel to Appellant provided ineffective assistance to Appellant because counsel were seriously deficient in their performances causing prejudice to Appellant's defense and ultimately, depriving Appellant of a fair and reliable trial.**

## GROUND OF ERROR THREE

**The evidence adduced at trial is legally insufficient to support Appellant's conviction and punishment as no direct evidence was provided to substantiate the State's allegations as to the quantity of cartons within the stolen box or link the number of cartons no longer in inventory to Appellant.**

## STATEMENT OF FACTS

On November 10, 2011 a complaint was filed for the arrest of Jerryl Robinson, Appellant, alleging a theft of property with a value of between $1,500 and $20,000 [CR, pp. 7-8]. Appellant was subsequently arrested on November 17, 2011 and given his warnings by the Magistrate on the 18th of November, 2011 [Supp. CR, pp. 4]. Appellant was then detained, without the ability to pay his bond, in jail for one hundred and three days. Appellant filed a handwritten motion to release on February 27, 2012, with no hearing held or order from the court. [Supp. CR, pp. 6-11]. Appellant's was released on bail March 8, 2012 [Supp. CR, pp. 17]. After violating his bond provisions, Appellant returned to jail on May 11, 2013. [Supp. CR, pp. 13-14, 19].

June 10, 2013, another four hundred and seventy days elapsed from Appellant's motion to release with no trial or indictment, Appellant then exercised his rights and filed a handwritten motion to dismiss for lack of presentment of an indictment. [Supp. CR, pp. 22-27]. Neither a hearing nor an order have ever been made for this writ. Then, on August 14, 2013, after nearly twenty one months, Appellant was indicted on two counts; (1) theft of property valued at less than $1,500, and (2) theft of property valued between $1,500 and $20,000. [CR, pp. 10-13].

Appellant proceeded to trial on June 9, 2014 with representation provided by Mr. David Collins. [CR, pp. 14; RR, Vol. 2, pp. 4-144, Vol. 3, pp. 9-155; Vol. 4, pp. 6-104]. Appellant is accused of stealing cartons of cigarettes from a local CVS store on November 8, 2011 as a co-party. [CR, pp. 67-73;RR, Vol. 3, pp. 27-29].[1]

While at trial, on June 10, 2014, the State produced an alleged "ledger"[2] evidencing the number of cartons no longer in the CVS store's inventory and the

---

[1] The State put on video surveillance evidence showing Appellant and another gentleman entered the CVS store around 7:30 p.m. [RR, Vol. 5, S5]. Appellant asked for assistance from an employee to print photographs off his cell phone [RR, Vol. 3, pp. 47-51]. Meanwhile, the other gentleman who Appellant accompanied into the CVS store, snuck behind the cashier's counter and picked up a box [RR, Vol. 3, pp. 51]. The other gentleman then proceeded to carry the box out of the store with the CVS employee running after him [RR, Vol. 3, pp. 52-54]. The State also produced a CVS ledger and testimony from the CVS employee involved alleging that the box contained cartons of cigarettes with a value of over $1,900 [RR, Vol. 3, pp. 52-54]. Notably, only an instruction on the law of parties was read to the jury without any charges for conspiracy ever alleged against Appellant or his co-defendant.

[2] In the testimony of the CVS employee, the terms invoice and inventory were used to describe the documentation used to reach the conclusion that 36 cartons of cigarettes were missing. However, the document produced by the CVS employee, and later admitted into evidence, is a completely distinct document, only showing what is not in inventory. The term ledger is more closely aligned with what the document actually purports to represent, as a receipt denotes that a purchase was made, an inventory denotes what is in the inventory and an invoice relates to an order of some sort.

value of said missing cartons. [RR, Vol. 3, pp. 55-66]. Having never seen the piece of evidence before, Mr. Collins objected to its admissibility raising issues of surprise [RR, Vol. 3, pp. 56]. The Court overruled the objection and allowed Exhibit 6, the CVS ledger, into evidence, which indicated the items that were on the inventory sheet from the morning of November 8, 2011, but were never stocked on the CVS shelves. [RR, Vol. 3, pp. 43, 52, 65-66]. Witness testimony was given about Exhibit 6, indicating that it was printed the night of the incident at issue, November 8, however, the time stamp printed on the ledger show it was printed mid-morning the following day, November 9, 2011. [RR, Vol. 3, pp. 59, Vol. 5, S6]. The same witness was also unable to recall the number of cameras that captured the event in question and had to be asked several times, even led, but inevitably admitted that she "thought it was three. I'm sorry." [RR. Vol. 3, pp. 70].

At the closing of the State's case in chief, Mr. Collins moved for a directed verdict, both orally and in writing. Mr. Collins' written motion argued that no evidence was produced as to Appellant's intent to steal the property while Mr. Collins' oral motion was based upon the dollar figures provided in Exhibit 6. [CR, pp. 64-66; RR, Vol. 3, pp. 122-130]. Mr. Collins' argued that Count 2, the charge of appropriating property, with the intent to deprive, of a value of $1,500 or less, was not substantiated by the evidence as a ledger showing the value to be over $1,900 had been entered into evidence and requested the charge be dropped. [RR, Vol. 3,

pp. 123-126]. After much discussion with the Court, and the State explaining that Count 2 was brought based on the possibility that the jury had not found the ledger to accurately reflect the number of cartons or dollar value, the Court overruled both directed verdict motions but struck Count 2, except the portion mentioning "…and the said defendant had previously been convicted two or more times." [RR, Vol. 3, pp. 123-126]. The State then requested that defense not be permitted to argue the monetary value of the items stolen being that below $1,500 as they had that count stricken. [RR, Vol. 3, 130-131]. Without objection from defense, the Court granted the motion. [RR, Vol. 3, pp. 130-131].

On June 11, 2014, the jury found Appellant "Guilty" of theft of property valued between $1,500 and $20,000 and was subsequently sentenced by the jury to 15 years confinement. [CR, pp.74, 86; RR, Vol. 3, pp. 152, Vol. 4, pp. 101-102].

## SUMMARY OF THE ARGUMENTS

Appellant's constitutional right to a speedy trial was deprived by the trial court errors because, despite his pleas, no hearings were held and no action was taken regarding Appellant's 180 day writ. The State was not ready for trial, and after 180 days, he had not formally charged with a crime. Within 180 days from his arrest, November 17, 2011, the State had taken no action on Appellant's case, in direct violation of the United States and Texas Constitutions. Appellant justly exercised his right to be free from oppressive pretrial incarceration and uncertainty by filing

15

his 180 day writ based on the Sixth Amendment of the United States Constitution, Article 1, Section 10 of the Texas Constitution and the Texas Code of Criminal Procedure Article 32.01.

The trial court, however, erred by failing to act on the writ request to eradicate the injustices imposed upon Appellant. The trial court's inadequate constitutional protection of Appellant harmed Appellant by depriving him of his pre-trial liberty and permitting undue delay. This is a clear abuse of discretion and reversible error.

Further, Mr. Michael Zamora, the initially appointed counsel, during this time failed to investigate, and file these constitutional writs on behalf of his client. It seems he never noticed his client was being held on bail for more than 180 days without indictment, or after the last day of the next term of the court, in violation of Article 32.01 of the Texas Code of Criminal Procedure. Mr. Zamora wholly failed to investigate or draft any motions to aid his client in his defense and/or dismissal. Rather Appellant himself had to research, draft and file both motions entirely on his own. Had counsel performed his base duties, he would have been able to effectively advocate to: (1) release his unindicted client; (2) move for dismissal of charges; or (3) prevent undue and prejudicial delay of trial.

In addition, Mr. David Collins, appointed counsel for trial provided inadequate assistance of counsel in several different ways. Mr. Collins did properly preserve error as to the admission of Exhibit 6, a ledger used for inventory purposes

for the CVS store. However, what's more, counsel failed to investigate the physicality of the evidence or to cross-examine the witness as to blatant discrepancies in testimony. He never asked when the ledger was created, how the accusation of 36 cartons came about, or any other plausible explanations as to the whereabouts of the missing cartons over the course of over 24 hours in order to raise a reasonable doubt in the minds of the jurors.

Later in trial Mr. Collins' inadequacies continued. After the trial court overruled his objection to Exhibit 6 and the State rested its case in chief, Mr. Collins proceeded with both oral and written motions for directed verdict.[3] Mr. Collins' oral motion requested that Count 2, the lesser charge, be stricken, as the evidence did not support the charge. Mr. Collins argument was based on Exhibit 6, the ledger, which indicated the value of the property missing to be more than $1,900, before tax. Upon the Court striking Count 2, the State requested that Appellant and his counsel not be able to argue the value of the stolen property was below $1,500. Mr. Collins hamstrung his client – by preventing him from mitigating culpability or requesting a lesser included - or asserting really any logical defense at all. Defense counsel actually agreed to not argue against the value or number of cigarettes in the box stolen, thereby, winning the State's case for them.

---

[3] Mr. Collins written motion for directed verdict is not at issue here.

17

There was no logical trial strategy presented, such as mistaken identity, incredibility of the witness, etc. Therefore, defense counsel was ineffective. In Texas, counsel has per se violated the *Strickland* factors when they fail to ask for a lesser included offense, here the lesser charge for theft of property valued at less than $1,500.

Trial counsel, like initially appointed counsel, failed to perform his duty to investigate. The box in question was never recovered, nor any of the contents alleged to be contained inside. However, trial counsel never attempted to investigate the physicality of a similar box in dimension in order to determine how many cartons of cigarettes could have fit. Such a failure on the part of counsel precluded Appellant from making any sort of proper defense and certainly, from any chance of having a fair and reliable trial.

Lastly, the evidence produced at trial was legally insufficient to support the verdict because it was physically impossible for a reasonable juror to count 36 cartons in the box taken. The video evidence used shows the box stolen and when broken down into still frames, it is unclear how many cartons were contained therein thus, not permitting any reasonable juror to find 36 cartons to fit. Also, the State failed to provide evidence linking the number of cartons alleged to be no longer in CVS's inventory by the alleged ledger to Appellant. With the number of cartons in the box in question being unknown, the value of the property stolen is consequently

unknown, and without a link provided between Appellant and the cartons said to no longer be in stock, the guilty verdict based solely on Count 1, is therefore, not supported.

## GROUND OF ERROR ONE

THE TRIAL COURT'S ERRORS LED TO A SUBSTANTIAL, PRESUMPTIVELY PREJUDICIAL AND UNNECESSARY DELAY, WHICH SUBJECTED APPELLANT TO OPPRESSIVE PRETRIAL INCARCERATION, HIGH LEVELS OF ANXIETY AND CONCERN, AND IMPAIRED APPELLANT'S ABILITY TO ADEQUATELY PREPARE HIS DEFENSE AS NEARLY TWENTY ONE (21) MONTHS ELAPSED BETWEEN THE TIME APPELLANT WAS ARRESTED AND THE TIME APPELLANT WAS EVENTUALLY FORMALLY INDICTED.

### Standard of Review

When reviewing a trial court's ruling on a speedy trial claim, a bifurcated standard of review is applied: First, for an abuse of discretion as to the factual components; and second, a de novo review of the legal components. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); *Ex parte Skinner*, 2009 Tex. App. LEXIS 6340 *6 (Tex. App—Corpus Christi 2009, mem. opp.). In its analysis, the reviewing court is to utilize only the record as it existed before the trial court at the time of the filing of the writ of habeas corpus. *Ex parte Turner*, 612 S.W.2d 611, 612 (Tex. Crim. App. 1981); *Washington v. State*, 326 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *State v. Ybarra*, 942 S.W.2d 35, 36-37 (Tex. App.—Corpus Christi, 1996, pet. dism'd). Although a pre-trial writ of habeas corpus is not ordinarily available to defendants for speedy trial claims, in situations

such as this, where the State has failed to bring formal charges in a timely fashion, no other adequate remedy exists.[4]

Additionally, because speedy trial issues have been raised, the appellate court is to apply a balancing test of four factors to determine when pre-trial delay denies an accused of his right to a speedy trial. These factors, also known as the *Barker* factors include: "(1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as the delay's result." *Zamorano*, 84 S.W.3d at 648 (quoting *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

### Discussion

*Authorities*

One's fundamental right to a speedy trial is guaranteed under the Sixth Amendment of the United States Constitution as well as Article 1, Section 10 of the Texas Constitution. U.S. CONST. amend. XIV; Tex. Const. art. I, § 10. This right is immediately triggered by the happening of either the arrest or indictment of an accused, whichever happens first. *United States v. MacDonald*, 456 U.S. 1, 7, 102

---

[4] *Ex parte* Skinner, 2009 Tex. App. LEXIS at *6; *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) (citing *Ex parte Delbert*, 582 S.W.2d 145, 146 (Tex. Crim. App. 1979); *Ex parte Martin*, 6 S.W.3d 524, 525 (Tex. Crim. App. 1999); *Ex parte Jones*, 449 S.W.2d 59, 60 (Tex. Crim. App. 1970)); *State v. Fisher*, 198 S.W.3d 332, 335 (Tex. App.—Texarkana 2006, pet. ref'd); *Ex parte Lamar*, 184 S.W.3d 332, 323-24 (Tex. App.—Fort Worth 2005, pet. ref'd).

S. Ct. 1497, 71 L. Ed. 2d 696 (1982); *Nelson v. Hargett*, 989 F.2d 847, 857 (5th. Cir. 1993); *Ex parte Skinner*, 2009 Tex. App. LEXIS at *8-9. To ensure one's rights are not violated, it is the State's duty to indict the defendant, whether being held in incarceration or are out on bail for his appearance, within either 180 days or before the last day of the next term of the court after the defendant's commitment. Tex. Code of Crim. Proc. art. 32.01. Upon the filing of a petition for writ of habeas corpus alleging a violation of the State's duties under article 32.01, the trial court is required to dismiss the criminal accusation and discharge bail, unless the State can show good cause, supported by an affidavit, as to why they have not properly acted upon their duty. *Id.*

While an accused may bring a claim involving a speedy trial issue at any time, when brought before indictment, such claim is properly brought in a petition for writ of habeas corpus under article 32.01. *Id.* Further, under the Texas Code of Criminal Procedure article 11.14, the petition for writ of habeas corpus must contain certain elements, including, for whom the petition is to benefit, that the party is illegally confined, a prayer and an oath. Tex. Code Crim. Proc. art. 11.14. No other requirements as to form or substance are stated in order for the petition to be heard or acted up on by the court.

It is then up to the trial court to assess one's right to a speedy trial, by utilizing the four *Barker* factors: "(1) whether delay before trial was uncommonly long; (2)

21

whether the government or the criminal defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as the delay's result." *Zamorano*, 84 S.W.3d at 648 (quoting *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). In addressing these factors, the first is akin to a threshold issue, in that, *if* the length of delay is not "presumptively prejudicial," the remaining factors are *not* to be considered. *Barker*, 33 L. Ed. 2d at 117, *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

In order for a delay to be "presumptively prejudicial" to the accused, the courts are to take all the surrounding circumstances into account. *Zamorano*, 84 S.W.3d at 648; *Harris*, 827 S.W.2d at 956; *Barker*, 407 U.S. at 530. Certain periods of time, however, have been held by Texas courts to be prima facie evidence of a "presumptively prejudicial" delay. *Id.* The Fourth Court of Appeals in San Antonio held that a time as short as eight months is "presumptively prejudicial," thus triggering the review of the remaining three speedy trial factors. *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio, 1998, no pet.). While the Texas Court of Criminal Appeals has found a delay of seventeen months to be "presumptively prejudicial." *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983).

The second factor, reasons for the delay, is fact specific and the court is to take all of the relevant circumstances into account in determining who is more at

fault, giving different weights to different reasons.[5] *Zamorano*, 84 S.W.3d at 649. The third factor depends on the timing of the filing of the accused's petition for writ of habeas corpus and the forth factor is again, dependent on the facts in the particular case. Courts should consider the accused's rights under the Speedy Trial Act, which was designed to : "(1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

### Analysis

In Mr. Robinson's case, he filed a pro se, handwritten 180 day writ on June 10, 2013 requesting dismissal of the charges against him and release from bail pursuant to article 32.01 and his fundamental right to a speedy trial. Appellant waited from his arrest on the 17th of November of 2011 until August 14, 2013 to be indicted. If an accused has not been previously arrested as to a charge, the State is only bound by the related statute of limitations, however, once the accused has been arrested, the clock starts ticking on the 180 day bar. *See* Tex. Code Crim. Proc. art. 32.01 According to article 32.01, the State must present an indictment of the charges against the accused before 180 days or the last day of the next term of the court from the date the accused was detained in custody or held to bail. *Id.*

---

[5] A deliberate attempt on the part of the State to delay the trial in order to hamper the defense, weighs heavily against the State, while, negligence or any overcrowded docket should be weighed less heavily, but nevertheless considered and weighed against the State. *Barker*, 407 U.S. at 531, *Strunk v. US*, 412 U.S. 434, 435, 37 L. Ed. 2d 56,96 S. Ct. 2260 (1973); *Turner*, 545 S.W.2d at 137.

23

Here, over five hundred and fifty days had lapsed from the time Appellant was originally arrested until Appellant filed his 180 day writ and nearly twenty one months, from the date of Appellant's arrest, before Appellant was actually indicted. Appellant filed a timely and proper 180 day writ petition, meeting all the statutory requirements as to form and substance of the petition, but received no answer from the State or action by the trial court.[6]

Besides the duty to indict imposed on the State, article 32.01 also contains language requiring the court to dismiss any criminal accusation and discharge bail upon the showing that the defendant has been detained or held to bail for the limited period of time with no formal indictment; the only caveat being, the allowance for the State to provide a showing, supported by affidavit, of "good cause" for the delay. Tex. Code Crim. Proc. art. 32.01. With Appellant's arrest taking place on November 7, 2011 and his 180 day writ being filed on June 10, 2013, nearly two months before his formal indictment, on August 14, 2013, Appellant's case is the very type article 32.01 is designed to dismiss. However, no answer was provided by the State and no action in the form of a hearing or an order was taken on the part of the trial court.[7]

---

[6] Article 11.10 of the Texas Code of Criminal Procedure requires a trial court to examine a petition for writ of habeas corpus, but only applies once a defendant has been indicted. Tex. Code. Crim. Proc. art. 11.10. A similar statute does not exist for the present facts, however, Appellant asserts that the legislative intent behind requiring a trial court to take action is the same. *See* Tex. Code. Crim. Proc. ch. 11. Additionally, a hearing on any motion is required when a motion is filed, a request for a hearing is made and upon a showing that facts are controverted. *Ex parte Chambers*, 612 S.W.2d 572, 573-74 (Tex. Crim. App. 1981). Although the State failed to provide any answer to the claims in Appellant's petition, the facts were obviously controverted as the petition was effectively denied.

[7] Appellant filed a pro se, handwritten writ for mandamus relief with the Third Court of Appeals August 5, 2013 requesting the trial court take action on his 180 day writ [Supp. CR, pp. 31]. On August 30, 2013, a Memorandum

24

Appellant's 180 day writ also alleged violation of his right to a speedy trial under the Sixth Amendment of the United States Constitution and Article 1, Section 10 of the Texas Constitution. U.S. CONST. amend VI; Tex. Const. art. I, § 10. The United States Supreme Court has enumerated several factors to be considered as a balancing test by the trial court, and if required, by the reviewing court, when an issue involving one's fundamental right to a speedy trial arise. *Barker*, 407 U.S. at 514. These *Barker* factors, adopted by the Texas Court of Criminal Appeals in *Hull v. State*, include: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant resulting from the delay.[8]

As previously referenced, the first factor, the length of delay, here being nearly twenty one months, greatly exceeds those time periods already established

---

Opinion from the Third Court of Appeals, received by both the District Clerk's Office and Appellant, indicates that the trial court provided some sort of documentation to lead the Third Court to believe action had been taken on the petition [Supp. CR, pp. 32]. With no action, other than the State's formal indictment of Appellant on August 14, 2013, Appellant sent letters to both the Court of Criminal Appeals and the District Clerk's Office in order to try and receive more information related to his case [Supp. CR, pp. 20, 28, 33, 35-36, 37, 40-42, 46-48, 50, 51-52 ].

January 3, 2014, the District Clerk responded that Appellant's petition filed in June had been done so incorrectly and instructions were enclosed on proper form [Supp. CR, pp. 39]. Nearly seven months later Appellant received this notification of improper form, however, article 11.14 of the Texas Code of Criminal Procedure provides that the petition must only "substantially" state: (1) the person for whose benefit the application is made is illegally restrained in his liberty and by whom, naming parties, if their names are known, or if unknown, designating and describing them; (2) may state only that the party is illegally confined or restrained in his liberty; (3) a prayer; and (4) an oath must be made that the allegations of the petition are true, according to the belief of the petitioner. Tex. Code of Crim. Proc. art. 11.14. Appellant's 180 day writ meets all of these requirements and therefore, should have been put before and considered by the court in an expeditious manner. It is still unclear, however, what action the trial court supposedly took as the basis for the Third Court's rejection of mandamus relief.

[8] *Barker*, 407 U.S. at 514; *Harris*, 827 S.W.2d at 956; *Deeb v. State*, 815 S.W.2d 692, 704 (Tex. Crim. App. 1991); *Chapmans v. Evans*, 744 S.W.2d 133, 135 (Tex. Crim. App. 1988); *Hull v. State*, 699 S.W.2d 220, 221-224 (Tex. Crim. App. 1985).

by courts across this State as being prima facie evidence of a "presumptively prejudicial" delay (some court holding as low as eight months and others higher at seventeen months to be sufficient). *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio, 1998, no pet.). A finding of a "presumptively prejudicial" delay allows the trial court to move forward with its analysis of the *Barker* factors, with factor one weighing against the State.

Factor two, the reason for the delay, is a highly fact specific inquiry delving into the basis behind the parties inaction and possibly fault in not acting sooner. *See State v. Munoz*, 991 S.W.2d 818, 821-23 (Tex. Crim. App. 1999). Here, because no answer was filed by the State in order to show "good cause" for the delay and neither a hearing nor an order is contained in the Clerk's record, the reason for the State's delay is unclear. When the record is silent regarding the reason for the delay, the Court of Appeals is to weigh this factor against the State. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Further, Appellant acted diligently by filing not only his 180 day writ but had also previously filed a 90 day petition under article 17.151 because he had been held in incarceration for more than 90 days and the with no indication from the State they were ready, or had even indicted him [Supp. CR, pp. 6-11, 22-27].

26

Factor three, Appellant's assertion of his rights, also weighs against the State. Appellant's 180 day writ was filed on June 10, 2013 [Supp. CR, pp. 22-27]. Although there is no bright line when an assertion of speedy trial need be made, when an indictment has yet to be filed, a 180 day writ requesting dismissal for delay is required to be made before a formal indictment is brought, as otherwise it is waived. *See Barker*, 407 U.S. at 527; *see also Blumenstetter v. State*, 117 S.W.3d 541, 2003 Tex. App. LEXIS 8387 (Tex. App.—Texarkana 2003); *see also Herrera v. State*, 2009 Tex. App. LEXIS 9690 (Tex. App.—San Antonio, 2009). Here, Appellant's motion was filed over two months before an indictment was brought and therefore, was in due course.

The fourth factor, weighing prejudice to the defendant due to the delay. This is abundant here. The right to a speedy trial guaranteed by both the United States and Texas Constitutions is designed to protect against (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. "Although the last type of prejudice is the most serious, a defendant's claim of a speedy trial violation need not necessarily demonstrate prejudice to his ability to present defensive matters."[9] *Barker*, 407 U.S. at 532.

---

[9] Appellant's failure to cite any specific "demonstrable" prejudice--that is, impairment of his ability to present potential defenses--does not doom his claim, since excessive delay can compromise a trial's reliability in unidentifiable ways. *Moore v. Arizona*, 414 U.S. 25, 26-27, 38 L. Ed. 2d 183, 94 S. Ct. 188 (1973) (per curiam). "Though time can tilt the case against either side . . . one cannot generally be sure which of them it has prejudiced

Appellant was incarcerated nearly the entire two and half years leading to trial, with nearly two of those years spent in jail without a formal indictment. This caused his liberties to be restrained and subjected him to the very type of pretrial oppressive incarceration the speedy trial act was designed to protect against. Appellant also suffered from great amounts of anxiety, suspicion and hostility as evidenced from the numerous letters sent to the district clerk's office as well as various courts, including the trial court, Third Court of Appeals and even if Texas Court of Criminal Appeals, where Appellant believed the system had failed him and that he would never receive answers as to the status of his indictment, trial or 180 day writ [Supp. CR, pp. 20, 28, 33, 35-36, 37, 40-42, 46-48, 50, 51-52].

Additionally, Appellant's defense was inevitably impaired by the passage of time, as evidence becomes unavailable and the memories of witnesses dissipate over the course of the two and half gap.

The merit of this case relied upon accounting for specific items alleged to have been stolen, requiring exact dollar amounts and linkage to Appellant. The only evidence produced as to quantity and value was a "ledger" evidencing the number and value of cartons of cigarettes no on shelves around November 8, 2011. The

---

more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, . . . it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett v. US*, 505 U.S. 647, 655-56 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992).

evidence, however, shows the ledger was actually printed midmorning of November 9, 2011. The witness who testified as to the CVS ledger relied solely on the ledger to indicate the number of cartons missing, with no direct knowledge or ability to directly recall the specific facts because such a large amount of time had elapsed from the offense to trial.

Memories naturally fade over time. This infringes upon the accuracy of the witness' perceptions, and although traditionally tested through cross examination, the ledger had already been entered into evidence, over counsel's objection, thus allowing the witness to use that information rather than having to personally recall how these items were linked to Mr. Robinson. *See Granek v. Tex. State Bd. Of Med. Exam'rs*, 172 S.W.3d 761, 773 (Tex. App.—Austin 2005, no pet.).[10]

The trial court clearly abused its discretion in effectively denying Appellant's 180 day writ by neglecting to take action on it. Appellant's due process rights were violated causing prejudice to his defense, anxiety, and oppressive pretrial incarceration of over two and half years awaiting the State to take action or in the alternative, for the trial court to grant him the relief he desperately and rightfully requested.

---

[10] Further, Appellant argues he was unable to investigate the actual physical evidence against him. He should have been able to examine the alleged box stolen and the physical number of cartons contained therein. But, the trial was so far removed from the date of the offense and as such, was no longer available for his investigation

**BOTH COUNSEL TO APPELLANT PROVIDED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE COUNSEL WERE SERIOUSLY DEFICIENT IN THEIR PERFORMANCES CAUSING PREJUDICE TO APPELLANT'S DEFENSE AND ULTIMATELY, DEPRIVING APPELLANT OF A FAIR AND RELIABLE TRIAL.**

## Standard of Review

Counsel's representation is to be scrutinized under the *Strickland v. Washington* test, requiring the appellate court to gauge the effectiveness of counsel in relation to a defendant's rights guaranteed under the Constitution. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, Appellant must show: (1) counsel's performance was deficient as to not function as the 'counsel' guaranteed under the Sixth Amendment of the United States Constitution; and (2) that there is a reasonable probability that the result of the proceeding would have been different, but for his counsel's deficient performance. *Id.* Typically, reviewing courts give great deference to possible trial strategy counsel may have had, causing Appellant to have to provide evidence to overcome such presumption. *Id.* at 689; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Such evidence includes the clerk's and reporter's records with clear indications of where the counsel's performance was so deficient. *Mallet v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001).

1) Mr. Michael Zamora's conduct preceding Appellant's trial was so remiss as to require Appellant to provide his own legal relief entitled to him under the United States and Texas Constitutions to no avail.

**Discussion**

Authorities

To prove his counsel provided ineffective assistance, Appellant must first show that the counsel's performance fell before an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). He secondly must prove prejudice, meaning a reasonable probability exists (sufficient to undermine confidence in the outcome), that but for counsel's deficient conduct, the result would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Counsel is then permitted to rebut any claims brought against him for ineffective assistance of counsel, normally claiming trial strategy as a defense for his actions. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Here, Appellant contends no feasible trial strategy could justify counsel's deficiencies.

Analysis

A trial strategy is one that is well thought out and investigated, not a hindsight, knee-jerk reaction to a claim for ineffective assistance of counsel. *See Ex parte Overton*, 444 S.W.3d 632, 641 (Tex. Crim. App. 2014). No sound trial strategy could exist as to the failure on the part of Mr. Zamora to file a motion to release under

31

Article 17.151, as his client was sitting in jail for greater than the allotted 90 days, without prosecution. And further, no viable defense of trial strategy can be used in order to defend Mr. Zamora's inaction, once again, for not filing a petition for writ of habeas corpus requesting dismissal due to delay under article 32.01 with a client in jail. This is basic defense attorney calendaring and common relief within the courts.

Not only were both of these matters adequately brought to the attention of Mr. Zamora, as shown by the letters from Appellant to the Court, Mr. Zamora had a duty, as counsel, to research and advocate for his client's rights through motions and petitions.[11] [CR, ]. Further, when Appellant drafted and filed these motions and petitions on his own, in order to protect his constitutionally guaranteed rights, Mr. Zamora again was on notice, and further failed his client by not ensuring Appellant received his day in court on these pressing matters [Supp. CR, pp. 28.] One questions why counsel was appointed at all if even these basic principles were not recognized.

---

[11] The Fourth Court of Appeals has recently found that when counsel chooses not to perform a useless or futile act, such does not amount to ineffective assistance of counsel. The Court was addressing a claim for ineffective assistance of counsel for failure to move for dismiss of an indictment under article 32.01 for speedy trial violations. Such is the opposite situation in the present case, such a performance on the part of Mr. Zamora would not have been useless or futile, because Appellant remained locked up and Appellant himself had time to draft and file a 180 day writ and file it with the clerk's office over two months before an indictment was finally returned, making the petition both timely and extremely useful. *See Griffis v. State*, 441 S.W.3d 599, 605-06 (Tex. App.—San Antonio 2014, no pet.) (referencing counsel's right to not perform a useless or futile act, such as moving to dismiss a charge under article 32.01 for lack of speedy trial after an indictment has already been returned).

Mr. Zamora wholly failed to act, amounting to a serious deficiency in his performance, and further, undoubtedly affected the outcome of the case as Appellant would have been released from jail pursuant to article 17.151 and the charges would have been dismissed and bail discharged under article 32.01 had Mr. Zamora actually acted with a sound trial strategy.

2) Mr. Collins' assistance was clearly ineffective under the *Strickland* test as he deprived Appellant of a fair trial by barring his client from asserting the most basic defenses:  a) counsel barred himself from disputing the evidence; b) counsel barred his client from requesting the lesser included offense be considered.

## A. **Discussion**

### Authorities

A lesser included offense charge, much like an instruction, often allows the jury to find the defendant guilty of a lesser offense, typically with a lower punishment range. Trial strategies do exist which involve taking an "all or nothing" approach in order to try and achieve outright acquittal, by not giving the jury the option of a lesser included offense. *Tolbert*, 306 S.W.3d at 781; *Okonkwo v. State*, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013).

In order to bring a claim for ineffective assistance of counsel for a lesser included instruction not being given to the jury, evidence in the record must exist regarding the strategy employed by counsel, rather than mere speculation as to whether a valid strategy existed. *Turner v. State*, 2014 Tex. App. LEXIS 8706 (Tex.

33

App.—Austin 2014, pet. ref'd). A strong presumption of reasonable assistance is given, therefore, direct evidence in the form of a record must be provided into to rebut the same. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

### Analysis

Appellant's counsel, Mr. Collins, moved for an oral directed verdict in which he requested the lesser charge of theft of property valued at less than $1,500 be stricken for lack of evidentiary support. During direct examination of a CVS employee a ledger was entered into evidence, over defense counsel's objection, which indicated 36 cartons of cigarettes were no longer in CVS's inventory, valued at over $1,900, before tax. In Mr. Collins' oral motion for directed verdict on Count 2, he argued that the lesser theft charge is not substantiated by the evidence as the ledger provides evidence of the value of the property stolen being greater than $1,500. With that, trial counsel cut of his nose to spite his face. He barred any defense argument for a lesser included, and barred any ability of defense to argue against the alleged value of the stolen property.

At the break, the State explained their reasoning for charging both offenses, stating that the jury could have found the ledger an unreliable source for the quantity of cartons stolen and therefore the value of the stolen property, and therefore, the State wanted to ensure that both offenses were available to the jury in their decision of guilt/innocence.

The Court denied the defense's oral motion for directed verdict but struck Count 2 as it was no longer supported by the evidence. The State then moved for defense counsel to be enjoined from making arguments regarding the lesser value of the stolen. Without hesitation or objection, Mr. Collins agreed to forego any arguments regarding the value being less than $1,500 and State's injunction was granted.

Such an agreement deprived Appellant of any opportunity to have an instruction on a lesser included offense, let alone have the jury consider the lesser included offense during guilt/innocence. No viable strategic reason for this can be gleamed from the record.

As in any theft case, the issue of value is key and Mr. Collins completely dispossessed Appellant of any opportunity to argue against the State's endeavors or for a lesser included offense. As such, if not for Mr. Collins' deficient actions, a reasonable probability exists that the outcome of this proceeding would have been different.

## 3) David Collins provided per se ineffective assistance of counsel as he barred his client from requesting a lesser included offense in the charge to the jury

### A. **Discussion**

#### Authorities
Counsel is per se ineffective under the *Strickland* test when a request for an instruction on the lesser included offense is not made, if the trial judge would have

35

erred in refusing the instruction had counsel requested it. *See Wood v. State*, 4 S.W.3d 85, 87 (Tex. App.—Fort Worth, 1999, pet. ref'd); *Tarango v. State*, 2007 Tex. App. LEXIS 2247 (Tex. App.—El Paso 2007, pet. ref'd). Often, direct appeal is an inadequate vehicle for raising a claim for ineffective assistance of counsel for lack of request of a lesser included instruction as the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592-93.

### Analysis

In the present case, no lesser included instruction was provided and no request for one was made by counsel because defense counsel hamstrung his client. Originally, the State had charged Appellant with both the greater and lesser crime, offering the explanation that the jury may not find the evidence sufficient to support the greater offense and so the State consciously decided to charge both. However, after Mr. Collins' oral motion for directed verdict, the lesser charge was struck and Mr. Collins unnecessarily agreed to not argue the amount to be less than the greater charge, theft of property with a value between $1,500 and $20,000 (with no identifiable trial strategy behind such decision).

Although there are times when it may be a reasonable trial strategy to not request a lesser included, such circumstances are not present here. Not asking for a lesser included is to put all of one's eggs in a single basket and hope that the jury find the evidence insufficient to support the greater crime, thereby, resulting in an

acquittal. But, to not request a lesser included followed by counsel not make any arguments related to the evidence being insufficient to support the greater, or even worse, to be in complete agreement that the evidence is sufficient to support the greater, is not a part of any sound trial strategy. Unlike most reporters' records this case has a very developed record as to why defense counsel did not request a lesser included, he did not feel the evidence substantiated it. Such actions abdicate one's duty as counsel and result in per se ineffective assistance of counsel.

## 4) Trial counsel's lack of inquisition into the quantity, value, and other alternatives caused his performance to be grossly deficient, prejudicing appellant's right to a fair and reliable trial

### A. <u>Discussion</u>

Authorities
In order to provide effective assistance, "counsel must have a firm command of the facts of the case as well as the law" before him. *Flores v. State*, 576 S.W.2d 632, 634 (Tex. Crim. App. 1978). Although, a legitimate trial strategy may involve completely waiving the right to cross examine a witness, if cross examination would only serve to reinforce the prosecution's theory, once counsel has begun to cross examine a witness, the veracity of the cross examination is subject to the *Strickland* two prong test. *Miniel v. State*, 831 S.W.2d 310, 324 (Tex. Crim. App.), *cert. denied*, 506 U.S. 885, 121 L. Ed. 2d 178, 113 S. Ct. 245 (1992); *Strickland*, 466 U.S. at 694.

## Analysis

Defense counsel did not waive cross examination but instead, neglected to question the CVS employee in order to controvert her testimony and provide a reasonable doubt in the minds of the jurors. The witness testified that the ledger was made the very night of the theft, however, the date and time stamp on the ledger directly controvert this testimony. However, counsel did not question the witness about the discrepancy nor what other plausible explanations there are as to what happened to the missing items between the early morning of November 8, 2011, when the items were checked into inventory, and mid morning the next day, November 9, 2011. Defense counsel's cross examination completely lacked any investigation into the clerk's knowledge of how many cartons where in the box taken, how one may be able to determine the number of cartons present in the box besides the ledger, the reliability of the ledger, or other viable possibilities for how those cartons were unaccounted for.

The CVS attendant was an essential witness in the case and without her testimony controverted, Appellant's defense had little chance of success. Mr. Collins could not have acted upon a sound trial strategy in failing to elicit testimony regarding the blatant discrepancies, which would have led to a reasonable doubt being raised as to the plausibility of the State's claims. Such deficiencies likely led, or a reasonable probability exists to believe, the result of the proceeding would have

been different, as the jury would have had a reasonable doubt as to the value of the property stolen.

## 5) Counsel at trial abrogated his duty to investigate the physicality of the evidence in order to obtain knowledge about the plausibility of the accusations against his client causing appellant to be stripped of any possibility of a Fair trial

### A. **Discussion**

#### Authorities

As stated previously, in order for counsel to provide effective assistance, a firm command of the facts of the case as well as the law is required. As such, counsel has a duty to make an independent investigation of the facts of his client's case. When challenging counsel's investigation in a claim for ineffective assistance of counsel, Appellant must show that he had a viable defense that his attorney failed to discover, looking from the viewpoint of the time of trial, rather than hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *King v. State*, 649 S.W.2d 42, 43 (Tex. Crim. App. 1983).

#### Analysis

Mr. Collins did not perform his duty to investigate. Had Mr. Collins adequately investigated this case, he would have discovered that the ledger describing 36 missing cartons of cigarettes could not have all possibly been taken by Appellant or his co-defendant. Rather, Mr. Collins would have discovered that 36

39

cartons would not have even fit in the box stolen on November 8, 2011.[12]   Mr.

Collins failed to perform his duty to investigate the physicality of the evidence,

otherwise his trial strategy would not have been to strike the lesser charge and agree,

without hesitation, to not argue the quantity or dollar value of the property stolen.

Such a failure on the part of counsel leads to a reasonable probability that the result

of the proceeding would have been different.

**GROUND OF ERROR THREE**

**THE EVIDENCE ADDUCED AT TRIAL IS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION AND PUNISHMENT AS NO DIRECT EVIDENCE WAS PROVIDED TO SUBSTANTIATE THE STATE'S ALLEGATIONS AS TO THE QUANTITY OF CARTONS WITHIN THE STOLEN BOX OR LINK THE NUMBER OF CARTONS NO LONGER IN INVENTORY TO APPELLANT**

A.  Standard of Review

To assess the legal sufficiency of the evidence, whether direct or

circumstantial, the reviewing court must "consider all the evidence in the light most

favorable to the verdict and decide whether, based on the evidence and reasonable

inferences therefrom, a rational juror could have found the essential elements of the

---

[12] Appellant's co-defendant, Mr. Frank Parramore, was acquitted on both charges, the same Appellant was indicted for, as the jury could not count 36 cartons in the  box, but only between 28-33. At a hearing on Mr. Parramore's motion to sever, the State argued the two charges were the same unit but alternative means and need not be stricken, however, at trial, proceeded with both charges. The Trial Court noticed the discrepancy and gave a directed verdict of not guilty on Count 2, theft of property valued less than $1,500, because otherwise error would ensue. With only Count 1, theft of property valued between $1,500 and $20,000, moving forward, Mr. Parramore's counsel argued that if the jury couldn't court 36 boxes, they could not convict Mr. Parramore, leading to an acquittal. *State v. Frank Parramore*, CR2013-245.

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Because jurors are permitted to draw multiple reasonable inferences, conflicting inferences may be supported by the record and the reviewing court is to presume that the trier of fact resolved the conflict in favor of the State and defers to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

B. Discussion

*Authorities*

The value of the property stolen is a required element to prove theft. Tex. Penal Code §31.03. Circumstantial evidence can be used in order to prove an element of the crime beyond a reasonable doubt and may alone be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). However, a link must also be made between the circumstantial evidence and the defendant. In a theft case, the property claiming to be no longer in the possession of the rightful holder must be linked to the accused. Although the State may provide "a collection potential linking factors, each of which might raise suspicion but is insufficient on its own to provide the required affirmative link between appellant" and the missing property. *Roberson v. State*, 80 S.W.3d 730, 742 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Without proof of the affirmative link, even viewing the evidence in the list most favorable to the verdict, the "logical force necessary to allow a rational juror

to find, beyond a reasonable doubt" that Appellant, or his codefendant, stole the property alleged will not exist. *Id.*

### *Analysis*

State's Exhibit 5, Part 3, shows a man, presumed to be Appellant's codefendant, behind the counter at the CVS store taking a white box, later alleged to be a box of cartons of cigarettes according to the ledger [RR, Vol. 5, S5, Part 3]. However, none of the video or picture evidence admitted in trial indicated the number of cartons actually taken [RR, Vol. 5, pp. 145, D1]. The only evidence submitted as to the value of the property taken is a ledger, which counsel for the State even admitted the jury may not believe the quantity or value [RR, Vol. 5, pp. 17, S6; RR, Vol. 3, pp. 125]. No testimony was elicited from the CVS employee as to if she had any personal knowledge as to the exact number of cartons contained in the box taken, as the only numbers she provided were read from the ledger that had already been admitted into evidence.

Upon review of the video and photographic evidence admitted, there is not a feasible way in which a reasonable juror could have found 36 cartons were contained in the box. No evidence was produced to support the charge of 36 cartons being taken, but only that 36 cartons were no longer in CVS's inventory between the time of early morning on November 8, 2011 and mid morning on November 9, 2011. Even weighing the evidence in the light most favorable to the verdict, there is no

evidence to support a reasonable juror's finding of beyond a reasonable doubt as to the essential element of the crime, the value of the property taken.

Additionally, the State failed to provide any logical link between Appellant and the items alleged to be missing as stated in Exhibit 6. Exhibit 6 is a ledger created by a CVS employee to show what items were in inventory the morning of November 8, 2011 but never stocked on the shelf by mid morning on November 9, 2011. There was no evidence produced, direct or circumstantial, providing a connection between those missing cartons and Appellant. Although plausible links were suggested by the State, none were sufficiently logical to rise to the level of beyond a reasonable doubt.

A plethora of reasonable doubt exists as to how many cartons were contained in the box as evidence was produced, through testimony, that the top of the box had already been cut off and been placed behind the counter to be unloaded [RR, Vol. 3, pp. 43]. No direct evidence was produced of the number of cartons stolen in the form of the box itself later being recovered, personal knowledge of the number contained therein, or a coding system of CVS which indicates exactly what the contents of each box are. As such, the evidence is legally insufficient to support the criminal conviction and the case should be reverse and remanded.

## CONCLUSION

For the reasons stated herein, Appellant respectfully requests this court grant Appellant the relief requested by finding that the trial court erred in its failure to take

action on Appellant's 180 day writ, counsel for Appellant were both wholly deficient causing prejudice to Appellant's defense and ultimately depriving him a fair and reliable trial, or find the evidence legally insufficient to support the verdict and thereby reverse and remand Appellant's case to the trial court.

## PRAYER

WHEREFORE, premises considered, Appellant respectfully requests that the judgment of conviction of the Appellant be reversed and remanded.

Respectfully submitted,

Hazel Brown Wright Reneau, PLLC
391 Landa Street
New Braunfels, TX 78130
Tel: 830-629-6955
Fax: 830-629-2559


By___/s/Marilee Hazel Brown /s/_____
   Marilee H. Brown
   marilee@hazelbrownlaw.com
   SBN# 24046044

# CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Appellant's Brief has this ____9th___ day of _____February____, 2015, been delivered to Jennifer Tharp, attorney for the Comal County District Attorney, Appellee, by hand at 150 N. Seguin Avenue, New Braunfels, TX 78130.

___*/s/ Marilee Hazel Brown /s/*_____
Marilee H. Brown

Certificate of Compliance with Rule 9.4(i)(3)

I hereby certify this brief is in compliance with TRAP 9.4(i)(2), being total, including tables and identification, under 15,000 words – actual total being (11,049).

____*/s/ Marilee H. Brown /s/*_____
Marilee H. Brown